Mildred **BOUTWELL**, Appellant,

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 96–1447.

United States Court of Veterans Appeals.

Aug. 27, 1998.

Sean Kendall, Boulder, CO, was on the brief for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Rosalind Eager, Washington, DC, were on the brief for appellee.

Before HOLDAWAY, IVERS, and GREENE, Judges.

HOLDAWAY, Judge:

The appellant, Mildred Boutwell, widow of veteran Robert L. Boutwell, appeals a July 1996 decision of the Board of Veterans' Appeals (Board or BVA) which denied her claim for service connection of the veteran's cause of death. This appeal is timely, and the Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the following reasons, the Court will affirm the decision of the Board.

## I. FACTS

The veteran served on active duty in the United States Navy from July 1942 to December 1943. At his induction examination, the veteran reported a history of rheumatic fever. An April 1943 service medical record states that the veteran had rheumatic fever when he was nine years old and that he was bedridden for six months. The record further states that the veteran had suffered from episodes of joint pain every two years, which had also confined him to bed, and that he had had a transient heart murmur. A June 1943 medical report indicated that electrocardiograms revealed slight myocardial damage. The veteran's service medical records also reported joint pain, especially in his knees. A medical consultation report in July 1943 concluded that he had mitral insufficiency from rheumatic heart disease. A service medical history abstract noted that in October 1943 the veteran was diagnosed with valvular heart disease with mitral insufficiency and rheumatic fever. In November 1943, a service medical board recommended that

the veteran be discharged because of his disabilities from rheumatic fever. Pursuant to the medical board's recommendation, the veteran was discharged in December 1943.

In July 1945, a VA regional office (VARO) granted the veteran service connection and a 30% disability rating for mitral stenosis and insufficiency as residuals of rheumatic fever. An April 1945 examination report noted that it did not find valvular heart disease or mitral insufficiency. The report also noted that chronic myocarditis had been confirmed on two occasions by electrocardiograms. The diagnoses listed were chronic myocarditis, rheumatic in origin from history, and rheumatic fever, quiescent. In June 1945, the appellant's heart was examined by electrocardiogram and the results were interpreted as essentially normal. In May 1947, the veteran was diagnosed with rheumatic heart disease, including mitral stenosis and insufficiency. The examiner noted a marked mitral sound and systolic murmur in his heart. The examiner also noted that the electrocardiogram was "strongly suggestive of myocardial damage." A June 1947 chest x-ray showed the heart to be of normal size and configuration. In June 1947, the VARO continued the veteran's 30% disability rating.

In October 1951, a VA examiner diagnosed the veteran with acute rheumatic fever by history without any evidence of residuals of heart damage. Based on that examination, the veteran's disability rating was reduced to 0% in December 1951.

The veteran's medical records reveal that he had a myocardial infarction in 1968 and possibly in 1964. In 1972 and 1988 he underwent coronary artery bypass surgeries. A 1989 medical report indicated that the veteran was diagnosed with coronary artery disease, congestive heart failure, arteriosclerosis obliterans, hypertension, and anemia. Medical records for the last three months of 1989 indicated that the veteran's coronary artery disease and congestive heart failure were stable and improving. However, from January to May 1990, his coronary artery disease and congestive heart failure deteriorated from fair to severe. The veteran died in June 1990 from a cardiac arrest. The death certificate listed coronary artery disease and congestive heart failure as the conditions that led to his cause of death.

The appellant filed an application for dependency and indemnity compensation (DIC) in August 1990. The appellant also submitted a letter from Charles H. Farr, M.D., stating:

> Mr. Boutwell had coronary artery disease with severe congestive heart failure. He also had a history of rheumatic heart disease which occurred at approximately age 21[to] 22 when he was in the U.S. Armed Forces. It is my medical opinion that this rheumatic heart disease could have contributed to his congestive heart failure.

Dr. Farr was the veteran's treating physician.

In August 1990, the VARO denied the appellant's claim for service connection of the veteran's cause of death. The appellant filed a timely Notice of Disagreement. In July 1991, the appellant submitted a VA Form 1–9, Appeal to Board of Veterans' Appeals, wherein she claimed that the veteran's heart conditions "all originated from having rheumatic heart disease while in service."

In March 1992, the BVA obtained a Board medical advisor opinion (BMAO) which stated that the veteran's service-connected rheumatic heart disease had not contributed to the veteran's coronary artery disease and congestive heart failure, which had led to his fatal cardiac arrest. The Board denied the appellant's claim in August 1992. In October 1993, this Court granted the appellant's unopposed motion to remand the matter to the BVA for failure to comply with the procedural requirements announced in *Thurber v. Brown*, 5 Vet.App. 119 (1993). In reference to the Court's order, the appellant's counsel wrote a letter to the BVA in January 1994 which stated:

> Pursuant to 38 C.F.R. § 20.902 (1993), Mrs. Boutwell requests that [sic] an independent medical expert (IME) opinion to determine whether Mr. Boutwell's death [was] service[ ]connected. Good cause exists for ordering such an opinion; Dr. Farr and [the Board medical advisor (BMA)] have expressed different and irreconcilable opinions.... If the BVA refuses an IME,

reasons and bases must be given for why an IME is not warranted.

The Board requested an additional BMAO in March 1994. The BMA considered the additional evidence submitted by the appellant and again opined that rheumatic heart disease was not a contributory factor in the veteran's cause of death. The appellant was served with a copy of the second BMAO and copies of the medical treatise cited in the BMAO. In response, the appellant submitted another medical opinion from Dr. Farr which stated the following:

> After reviewing [Mr. Boutwell's] chart and the response from the VA, specifically the information provided [in the BMAO,] it is still my medical opinion that rheumatic heart disease could have contributed to his congestive heart failure. It is a well[-]known fact that rheumatic heart disease can lead to congestive heart failure. It is also true that Mr. Boutwell's major medical problem was coronary artery disease; however[,] he also had the diagnosis that was first established when he was in the [U.S.] Armed Forces of rheumatic heart disease. The medical sources that [the BMAO] cites indeed are valid regarding arteriosclerotic heart disease[;] however[,] rheumatic heart disease also remains a cause of congestive failure.

In October 1994, the Board informed the appellant that after a review of her appeal, it had "decided to undertake additional inquiry concerning the medical question involved in her case" by requesting an IME opinion. The Board indicated that the IME opinion was "necessary in order to ensure that her claim receive[d] every possible consideration." In November 1994, the Board referred the matter to Eugene E. Wolfel, M.D., a specialist in cardiovascular disease. The issue presented for an IME opinion was, "What is the likelihood that the veteran's rheumatic heart disease was a cause of his congestive heart failure or otherwise was a significant factor in his death?" The Board also stated that "[m]edical opinions ha[d] been offered both for and against the proposition that the service[-]connected rheumatic heart disease was a cause of the veteran's death."

Dr. Wolfel extensively reviewed and explained the veteran's available clinical data from military service to his death and concluded that "[t]here is no evidence to support the ongoing presence of rheumatic heart disease after the evaluation in 1951 ... [and] there is sufficient documentation from various cardiac tests ... to exclude active or clinically significant cardiac dysfunction from the recurrent bouts of acute rheumatic fever earlier in life." The doctor also concluded that the veteran's congestive heart failure could be completely explained by his progressive coronary atherosclerotic disease.

The Board sent Dr. Wolfel's opinion to the appellant's representative in April 1996 and informed him of her right to respond to the opinion and submit further evidence. The appellant subsequently sent an additional opinion from Dr. Farr in response and waived VARO consideration of Dr. Farr's opinion. Dr. Farr wrote the following:

> Mr. Boutwell apparently did have rheumatic fever, significant enough to have caused [VA] to give him a disability [rating], and it remains my medical opinion that this could have contributed to his heart disease. Dr. Wolfel does make a convincing argument that he had other risk factors for coronary artery disease, which is true.

> The second point that is not addressed by Dr. Wolfel concerns the psychological effect of having been diagnosed with rheumatic heart disease, and what role this could have played in his coronary artery disease.

> It is my medical opinion that while Dr. Wolfel's arguments are strong, Mr. Boutwell's congestive heart failure and ultimate death could have been hastened by his history of rheumatic heart disease.

On appeal to the BVA, the Board denied the appellant's claim for service connection of the veteran's cause of death because the preponderance of the evidence was against her claim.

## II. ANALYSIS

The appellant has not alleged that the Board did not have a plausible basis for its

determination that the veteran's death was not service connected. Instead, she challenges the process by which the Board arrived at its decision. First, she claims that the Board did not provide an adequate statement of reasons and bases either for its decision to obtain an IME opinion in the case or for its compliance with BVA Memorandum 01–94–17 dealing with the use of BMAOs. Second, she claims that the inclusion of the BMAO in her claim file and in the records considered by the IME tainted the adjudication of her claim. Third, she claims that the Board failed to discuss whether the psychological effects of being diagnosed with rheumatic heart disease contributed to the veteran's development of coronary artery disease and to his subsequent death.

### A. IME Opinion

■ Section 7109 of title 38, U.S.Code, states the following:

(a) When, in the judgment of the Board, expert medical opinion, in addition to that available within the Department, is warranted by the medical complexity or controversy involved in an appeal case, the Board may secure an advisory medical opinion from one or more independent medical experts who are not employees of the Department.

*See also* 38 C.F.R. § 20.901(b) (1997) (implementing regulation). Based on the language of the statute, the Board's decision to obtain an IME opinion is a matter left to the discretion of the Board. *See Bielby v. Brown,* 7 Vet.App. 260, 269 (1994). Because the statute does not specifically exclude review by this Court of the Board's decision and does provide a minimal legal standard, "medical complexity or controversy," which limits the Board's discretion, the Court reviews the Board's decision under the very narrow "abuse of discretion" standard. *See Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (holding that judicial review of agency decisions is precluded when there is no meaningful standard against which to review an agency action); *Malone v. Gober,* 10 Vet.App. 539, 545 (1997) (holding that even when a decision is discretionary, any limitation placed on that discretion by regulation is reviewable by the Court);

*Stringham v. Brown,* 8 Vet.App. 445 (1995) ("The standard of review this Court applies to a discretionary determination made by the Secretary is whether such determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."). In this matter, the appellant claimed that the veteran's history of rheumatic heart disease contributed to his congestive heart failure which directly caused his death. The appellant submitted an opinion from the veteran's doctor that supported her contention. In response, the Board obtained two BMAOs that opined that the veteran's congestive heart failure was not caused by any residuals of his rheumatic heart disease. Therefore, it is obvious that there was not only a complex medical question, but also a controversy about its answer, and the BVA's decision to request an IME opinion, apparently triggered by the appellant's request, was entirely within its statutory discretion.

■ The appellant now claims that the Board committed reversible error by failing to provide reasons and bases for its decision to procure an IME opinion. She presents this argument even though she, through counsel, originally asked the Board to obtain an IME opinion and did not object when the Board informed her of its decision to request an opinion or when a copy of the opinion was delivered to her for any response. The Court has held that even when a decision is left to the discretion of the Board, the Board must provide a satisfactory statement of reasons and bases for its decision, including its rationale between the facts found and the choice made. *See Stringham, supra; Bierman v. Brown,* 6 Vet.App. 125, 131 (1994); *Smith v. Derwinski,* 1 Vet.App. 267, 279 (1991) (all quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). Of course, none of those cases involved an exercise of discretion that was not only acceded to by the claimant, but was, perhaps, triggered by her affirmative request, as the one here.

■ The Board's decision to obtain an IME opinion is an interlocutory procedural decision. Thus, the Court would look to the Board's correspondence at the time of its

decision for possible reasons for its decision. The Board stated in a letter to the appellant that the IME was necessary for it to undertake further inquiry into the "medical question" in the appellant's case and to provide the appellant every possible consideration. The Board also noted in the actual request for the IME that there was medical evidence for and against a connection between rheumatic heart disease and the veteran's death. Therefore, the Board had provided satisfactory reasons for its determination that an IME was warranted to assist in making an informed decision. *See Bielby*, 7 Vet.App. at 268 ("The purpose of utilizing an expert, such as an IME, is to assist the trier of fact in understanding complex evidentiary materials in a claim."). The Board's reasoning for obtaining an IME opinion do not need to be repeated in the Board's final decision regarding the substantive claims. Further, where, as here, the appellant is provided notice and an opportunity to be heard regarding the Board's interlocutory procedural decision to obtain an IME, but fails to respond or object, the Board is not required to provide additional reasons and bases for that decision. In this case, not only did the appellant, represented by counsel, seek the IME opinion, but she did not object when the Board informed her of its decision to obtain an IME opinion or when the IME opinion was delivered to her for comment.

### B. BMAO

■ In *Austin v. Brown*, 6 Vet.App. 547 (1994), the Court reviewed the process used by the Board to obtain and consider a BMAO in the adjudication of an individual claim. First, the Court clarified that its express holding in *Thurber, supra*, meant that the Board must give the appellant reasonable notice of and an opportunity to respond to, including submitting additional evidence, any evidence developed or obtained by the BVA after the last Statement of the Case or Supplemental Statement of the Case was issued. *See Austin*, 6 Vet.App. at 550–51. Second, the Court held that under the principles inherent in "fair process," "evidence [must] be procured by the agency in an impartial, unbiased, and neutral manner." *Id.* at 552. The Court determined that the Board had acted

in a biased manner by submitting to the BMA a statement that the Board believed the claimant's in-service injury was not related to his cause of death. *Id.*

In response to the *Austin* decision, the Board issued BVA Memorandum 01–94–17 in August 1994. Pursuant to that memorandum, the Board sections were required to cease requesting opinions from BMAOs in individual appeals. *See id.* at 2. The memorandum also required that a copy of all BMAOs already received by a Board section must be sent to the claimant and his or her representative. *See id.* BMAOs were not to be removed from the record before the Board, but the Board was instructed to determine, on a case by case basis, "whether the appellant is prejudiced by: (1) reliance upon the [BMAO] to reach a decision in the appeal, and (2) failure to comply with certain procedural requirements of 38 C.F.R. § 20.903 and *Thurber.*" *Id.* at 2–3. If the Board finds that a BMAO is prejudicial to the appellant, the opinion is not to be used in deciding the appeal, and the Board is instructed to clearly indicate that the BMAO was not relied upon. *See id.* at 3.

The appellant claims that the Board failed to provide reasons and bases for its compliance with the BVA memorandum. Though the Board did not cite the BVA memorandum, the Board did expressly indicate (1) that the appellant had received proper notice of and an opportunity to respond to the BMAOs and (2) that it did not rely on the BMAOs in adjudicating the appellant's claim. Therefore, the Board has, in fact, provided an adequate explanation for how it complied with the BVA memorandum implementing the Court's *Austin* decision.

■ Also, the appellant claims that the Board violated the inherent principles of fair process as articulated in *Austin, supra*, by not removing the BMAOs from the claims file and by permitting the IME to consider the BMAOs in formulating his opinion. The appellant argues that the Board "telegraphed" its desired result to the IME by including the BMAOs and by stating that there was evidence for and against a theory that the veteran's rheumatic heart disease

contributed to his death. First, there is no requirement that the BMAOs be removed from the claims file. To the contrary, the BVA memorandum states that "[o]nce a [BMAO] has been transmitted to the Board [s]ection, the opinion will *not* be removed from the record." While the Board is precluded from considering BMAOs, which were found to be prejudicial, as part of its decision, the mere presence of the BMAOs in the claims file did not violate the principles of fair process. Second, when an IME reviews a claimant's disability picture, all relevant medical evidence should be available to the expert. To an IME, the opinion of a BMA would not carry any more weight than any other medical professional. An IME is completely independent from the Board, and it is presumed that the expert is not influenced by the Board's opinion or belief. There is no contrary evidence in the record that the Board improperly influenced the BMA or the IME. The Board simply informed the IME that there was evidence "for and against" a relationship between the veteran's service-connected condition and his death. That position was completely neutral. Again, it was the appellant's attorney who first recommended employing an IME to resolve the difference of opinion between Dr. Farr and the BMAOs. For the reasons stated above, the Court finds that the IME opinion was "procured ... in an impartial, unbiased, and neutral manner." *Austin, supra.*

### C. Psychological Effects of Rheumatic Heart Disease

 "The BVA must address all relevant medical evidence and provide adequate reasons for its evaluation of the credibility and weight of that evidence." *See Allday v. Brown,* 7 Vet.App. 517, 528 (1995). The appellant contends that the Board failed to discuss Dr. Farr's statement about the possible psychological effect that being diagnosed with rheumatic heart disease could have had in the development of the veteran's coronary artery disease. However, Dr. Farr's statement has *no* probative value. He expressed no medical opinion. He did not state that there was actually any psychological symptomatology related to the veteran's history of rheumatic heart disease, and there are no

medical records that document that the veteran had suffered from such psychological problems. Therefore, the Board was not required to discuss the weight and credibility of Dr. Farr's statement regarding hypothetical psychological symptoms. *See Allday, supra.*

### III. CONCLUSION

After consideration of the briefs and a review of the record, the Court holds that the appellant has not demonstrated that the BVA committed either legal or factual error that would warrant reversal or remand. Accordingly, the July 1996 decision of the Board is AFFIRMED.