Citation Nr: 1527826 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 09-45 309 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Whether the character of the appellant's discharge from service constitutes a bar to Department of Veterans Affairs (VA) monetary benefits.



WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Thomas O'Shay, Senior Counsel





INTRODUCTION

The appellant had active service from October 1992 to October 1995; he was discharged under other than honorable conditions. 

This matter comes before the Board of Veterans' Appeals (Board) from a January 2009 Regional Office (RO) administrative decision which determined that the appellant's active service was under dishonorable conditions for VA purposes, because of willful and persistent misconduct, thus constituting a bar to VA monetary benefits. In June 2012, the appellant appeared at a Board hearing held at the RO. 

In a November 2012 decision, the Board determined that the appellant's service constituted a bar to the receipt of VA benefits. The appellant appealed the November 2012 decision to the U.S. Court of Appeals for Veterans Claims (Court), which in an October 2013 Order granted a Joint Motion for Remand filed by the parties, and vacated the November 2012 decision. The Board thereafter remanded the case in September 2014.

The Board notes that following the October 2013 Order from the Court, the appellant appointed an attorney as his representative. In January 2015, that attorney's employer withdrew the attorney's representation of the appellant, and indicated that the appellant was aware of this. The appellant has not appointed another representative.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. The appellant's service was terminated by a discharge under other than honorable conditions.

2. The actions that led to the appellant's discharge from service constituted willful and persistent misconduct; his service was not otherwise honest, faithful or meritorious.

3. The appellant was not insane at the time of the offenses that lead to his discharge from service under other than honorable conditions.


CONCLUSION OF LAW

The character of the appellant's discharge from service is a bar to the payment of VA compensation benefits. 38 U.S.C.A. §§ 101(2), 5303(b) (West 2014); 38 C.F.R. §§ 3.1, 3.12, 3.301(c)(3) (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duty to Notify and Assist

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2014); Quartuccio v. Principi, 16 Vet. App. 183 (2002). In a letter dated in October 2008, prior to the initial adjudication of the claim, the RO advised the claimant of information necessary to substantiate the claim. He was advised of the type of evidence that could help him establish that his service was not dishonorable. During the Travel Board hearing, the undersigned Veterans Law Judge discussed the issue on appeal with the appellant and his then-representative as well as the evidence needed to prevail in his claim. See Bryant v. Shinseki, 23 Vet. App. 488 (2010). The appellant and his then-representative evidenced a full understanding of all matters discussed. 

The VA also has a duty to assist the claimant by making all reasonable efforts to help a claimant obtain evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c) (2014). In this case, VA obtained the claimant's service treatment and personnel records. The Board notes that the parties to the joint motion determined that the Board did not adequately explain why certain service personnel records did not evidence honest, faithful or meritorious service. Specifically, the parties referenced the appellant's "receipt" of the Good Conduct Medal, and his receipt of the National Defense Service Medal, the Sea Service Deployment Ribbon, and 4 letters of appreciation. The parties also referenced two letters written by the appellant's superiors who indicated he had the "ability" to be a good Marine. The Board remanded the case to obtain more information concerning the award of the appellant's medals and decorations. In response, VA obtained the requirements for each such award and decoration involved in this case. Unfortunately, the actual letters of appreciation or the basis for their issuance are not available. The Board finds that VA has fulfilled its duty to assist the appellant in obtaining records.

Inasmuch as there is no evidence that the appellant was insane at the time he committed the offenses leading to his other than honorable discharge, an examination or medical opinion is not required. The claimant submitted a lay statement, but has not identified any other potentially relevant evidence. 

Thus, the Board finds that all necessary notification and development has been accomplished, and therefore appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). Significantly, neither the appellant nor any representative has identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance to the appellant is required to fulfill VA's duty to assist the appellant in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).




II. Background

Service department records include an August 1995 chronological account of disciplinary actions and counseling administered during the appellant's service, compiled in preparation for a determination concerning a proposed administrative discharge of the appellant. This report delineated the following misconduct:

• Non-judicial punishment (NJP) on October 1, 1993, for making a false official statement. On October 5, 1993, he received formal counseling concerning this incident. 

• Formal counseling on October 5, 1993, regarding the creation of a perception of an inappropriate relationship with a member of the opposite sex while a married man. 

• NJP on April 29, 1994, for violation of a lawful general order by wearing an earring on liberty. (The Board notes that the appellant did not appeal this NJP.)

• NJP on April 26, 1995, for violation of a lawful general order by going to Mexico without the required special liberty pass. On April 27, 1995, he received formal counseling concerning this incident. 

• Informal counseling on May 9, 1995, for failing field day room inspection. 

• Informal counseling On May 31, 1995, for an unauthorized absence from squadron PT. 

• On August 14, 1995, he received a "derogatory page 11" concerning the disobedience of orders and regulations. (A page 11 entry documents that counseling has occurred, and is signed by the Marine involved as acknowledging counseling occurred, but is not a concurrence with the content of the entry. See MARINE CORPS SEPARATION AND RETIREMENT MANUAL, chapter 6, Enlisted Administrative Separations, paragraph 6105(3)(e).) 

In summary, it was noted that the appellant had accrued a total of 3 NJPs, 3 formal counselings, 1 derogatory page 11 and 2 informal counselings, which established a trend of disregard for military rules and regulations, and rendered him eligible for an administrative separation under other than honorable conditions, characterized by minor disciplinary infractions. 

The Commanding Officer of the squadron found that the appellant's misconduct, which was well-documented, was disruptive to the good order and discipline required in a military organization. He had been afforded every opportunity to succeed as a Marine and had chosen not to do so. Therefore, a discharge by reason of misconduct based on minor disciplinary actions, with an under other than honorable conditions discharge, was recommended. 

Supporting documents include written statements provided by two of the appellant's supervisors, who concluded their remarks by recommending a general discharge under other than honorable conditions.

The first, a supply officer, wrote, in May 1995, that since reporting to the command in May 1994, the appellant had demonstrated the ability to perform his duties in an excellent manner, but his conduct rapidly degraded to undesirable which in turn had gradually affected his job performance to the extent where it was marginal. Upon his arrival, he was counseled that he had the opportunity to start over without prejudice concerning his past misconduct. He had not, however, shown even a hint of desire to conform to the military standards of conduct. He was continually the subject of documented as well as numerous undocumented counseling and disciplinary actions. He was a negative influence on his peers and the work section. He required constant supervision, performed with minimum effort only those tasks specifically directed, and it was felt that he could not be rehabilitated. 

The gunnery sergeant stated that upon arriving at the unit, the appellant had been given the opportunity for a clean slate. He had the ability to be a good Marine when he so desired, but in the prior 5 months, he had done as little work as possible while trying to be as difficult and uncooperative as possible. He constantly did just enough to get by. His performance since January 1995 had been marginal at best. When assigned even the simplest of tasks he had to be continuously monitored and assisted. When assigned a task, he had one excuse after another as to why he could not get it done. He showed no initiative or desire to learn or excel, and attitude and demeanor had remained unprofessional. He had been counseled repeatedly concerning his deficiencies, but showed no improvement or desire to improve. He had come to the unit with a history of disciplinary and personal problems, and the trend had continued. 

Also included are records of a criminal investigation concerning an incident which occurred in December 1994. The appellant and three fellow Marines were at a fast food restaurant after a late night, when one of the appellant's companions became involved in an altercation with a female civilian, and reportedly assaulted her. In the course of the investigation, it transpired that the four Marines had begun their evening with a trip to a bar in Mexico. The file contains two reports of interviews obtained in April 1995, as part of an investigation in preparation for a court-martial of the appellant. These statements appear to relate to the alleged assault and not the appellant's conduct, although one of the witnesses indicated the appellant had wanted him to lie at his court-martial. Because the summary of disciplinary actions does not include any type of court-martial, however, it appears that the decision was instead to opt for NJP. According to the investigation reports, the appellant and three companions had decided to drive to Mexico on a Saturday night; the appellant was the driver of the vehicle. The trip to Mexico had been "in violation of the squadron order." 

The service department records also include records pertaining to a March 1995 investigation regarding allegations of racial bias brought by the appellant. This record includes a summary of counseling entries in the appellant's training record, which included counseling on June 1, 1994, on work habits, PT policy, and a squadron order on liberty in Mexico, which had been signed by the appellant. He was counseled in August 1994 on work habits not being up to par, and on December 14, 1994, for professionalism, education and work habits needing improvement. In January 1995, he was counseled concerning job performance, attitude, professionalism, and lack of qualification on the range. The supervisor commented that in general the appellant did not perform up to his capability, or at the level of his fellow Marines in the supply section. After the investigation, which included interviews with the appellant and seven other members of his work section, the investigator made findings of fact, including that there was no evidence or indication of racial bias within the group, and that the appellant was a substandard performer, less productive than his contemporaries in the section. 

The appellant was discharged in October 1995, under other than honorable conditions, due to misconduct due to minor disciplinary infractions.

The appellant's DD Form 214 lists the National Defense Service Medal and the Sea Service Deployment Ribbon as his awards and decorations, and notes that he received 4 letters of appreciation. The service personnel records document that two of those letters were received in October 1993, the third in December 1993, and the last in June 1994. The actual letters or the basis underlying their issuance are not in the records. The DD Form 214 also notes, in the "Remarks" section, that the appellant's Good Conduct Medal commences on April 27, 1995.

In connection with the September 2014 remand, VA obtained the requirements for the awards and decorations listed on the DD Form 214. The requirements for the Sea Service Deployment Ribbon state that the decoration is issued for personnel assigned to U.S. homeported ships, deploying units, or units of the Marine Corps operating forces, when such personnel have completed 12 months of accumulated sea duty, including at least one deployment of 90 consecutive days (with some exceptions). The requirements for the National Defense Service Medal are honorable active service as a member of the Armed Forces for certain dates (including August 1990 to November 1995). The requirements for the Marine Corps Good Conduct Medal are any three years of continuous active service after 1945. The medal is awarded where the qualifying service did not involve any NJP. When an NJP voids the creditability of the service, a new good conduct period will commence effective the date of the approval of the NJP.

The appellant contends that although he made some poor decisions in service, the offenses he was accused of were blown out of proportion. In September 2009, he said that one offense he was charged with was an inappropriate relationship with a member of the opposite sex while he was a married man. He said that they were only friends and no sexual intimacy had taken place. He said that he was legally separated and divorced within a week. He said that he was married but an annulment was pending at the time and his wife was openly involved in another relationship. He also said that false statements were made against him on several issues and there were indications that he was singled out because of his race. For example, he said that when counseled for not cleaning his room, his roommate was not counseled. 

At his Travel Board hearing in June 2012, the appellant testified that his disciplinary issues began in 1993. He said that the first incident was when he was in Japan and a gunnery sergeant saw him on base with another female, and assumed that he was engaged in a relationship with that female, but he was not. He stated that they were just having a conversation out in the open. He said that at the time, although he was married, he was separated. He felt it was just the gunnery sergeant's word against his. 

He also said that one incident involved when an officer thought that a pen in his ear was an earring. He said that although he was on base, both he and the officer were in civilian clothes, and he did not realize the other Marine was an officer, and he just waved him off. He also said that he did not even have a pierced ear at the time. 

He explained that if a Marine wished to go to Mexico, he had to sign up. He said that he went nearly every weekend with this friends, but that on this particular weekend, he had not planned on going because he did not have any money. He said that at the last minute, his friends talked him into going. He felt that he was 18 years old, and that if he could go to war and die for his country, he could just go to Mexico. So he rationalized it and succumbed to the peer pressure. The trip to Mexico was discovered because of a fight between one of his friends and a female civilian, which resulted in a police investigation. He felt that the punishment for the trip to Mexico was related to his having stuck up for his friend. He said that this was the only time he had failed to follow the proper procedure. Concerning the room inspection, he said that they had weekly inspections, and his room was generally immaculate; this was the only time he failed, and that it was due to his roommate, whose turn it was to clean the bathroom, having left some soap scum. He felt this was a retaliation for the Mexico incident. At his hearing, the appellant testified that he was offered a discharge in lieu of a court-martial. 

The appellant also testified that since service, he has not had any problems with authority, employers, or the law. He feels that that in service, he did not really understand the severity of the situation, or the charges against him. He does not believe that his service was dishonorable, and that the charges were, in essence, exaggerated. 

III. Analysis

As a threshold matter, a claimant must first establish, by a preponderance of the evidence, that the former service member upon whose service such benefits are predicated has attained the status of veteran. Holmes v. Brown, 10 Vet. App. 38, 40 (1997); Aguilar v. Derwinski, 2 Vet. App. 21 (1991). A "veteran" is "a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable." 38 U.S.C.A. § 101(2) (West 2014); 38 C.F.R. § 3.1(d) (2014).

The appellant was discharged from service under other than honorable conditions for misconduct due to minor disciplinary infractions. Pension, compensation, or dependency and indemnity compensation is not payable unless the period of service on which the claim was based was terminated by a discharge or release under conditions other than dishonorable. See 38 U.S.C.A. § 101(2); 38 C.F.R. § 3.12(a). Thus, it must be determined whether the appellant's under other than honorable conditions discharge was under dishonorable conditions.

A discharge or release because of one of the following offenses is considered to have been issued under "dishonorable" conditions, unless it is found that the person was insane at the time of committing the offense causing such a discharge (1) acceptance of an undesirable discharge to escape trial by general court-martial; (2) mutiny or spying; (3) an offense involving moral turpitude (generally includes conviction of a felony); (4) willful and persistent misconduct. This includes a discharge under other than honorable conditions, if it is determined that it was issued because of willful and persistent misconduct. A discharge because of a minor offense will not, however, be considered willful and persistent misconduct if service was otherwise honest, faithful and meritorious. 38 C.F.R. § 3.12(d) (2012).

Willful misconduct means an act involving conscious wrongdoing or known prohibited action. An act is willful misconduct where it involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences. Mere technical violation of police regulations or ordinances will not per se constitute willful misconduct. 38 C.F.R. § 3.1(n) (2012). 

Here, the appellant was discharged because of misconduct due to a number of minor infractions. In determining whether this constituted willful and persistent misconduct, the Board must first address whether the offense was a minor offense. The Court has held that offenses that interfere with one's military duties or preclude their performance are not minor. See Stringham v. Brown, 8 Vet. App. 445, 448 (1995); Cropper v. Brown, 6 Vet. App. 450, 452-453 (1994). 

The specific infractions listed on the recommendation for administrative separation included non-judicial punishment on October 1, 1993, for making a false official statement. On October 5, 1993, he received formal counseling concerning the incident. There are no records concerning this incident on file; thus, it is assumed to be a minor offense. 

The appellant also received formal counseling on October 5, 1993, regarding the creation of a perception of an inappropriate relationship with a member of the opposite sex while a married man. The appellant states that this incident occurred when he was in Japan. He states that a gunnery sergeant saw him on base with another female, and assumed that he was engaged in a relationship with that female, but that he was not. He stated that they were just having a conversation out in the open. He said that at the time, although he was married, he was separated. He felt it was just the gunnery sergeant's word against his. 

The Board does not find the appellant's statement to be entirely credible concerning this matter. For one thing, the female to whom he was speaking was another potential witness on his behalf, so it was not just the gunnery sergeant's word against his. The Board also finds it unlikely that a complaint would have been brought solely on the basis of an observation of a conversation, in public, between a male and female soldier, unless the other actions of the parties, or the content of the conversation, suggested that there was an inappropriate relationship. Moreover, the although the appellant states that he was separated from his wife at the time, and that the relationship was innocent, these facts are irrelevant because, first, the charge was creating an impression of an inappropriate relationship, and, second, the appellant was, in fact, married at the time. 

Regarding the NJP on April 29, 1994, for violation of a lawful general order by wearing an earring while on liberty, the appellant testified that although he was on base, both he and the officer were in civilian clothes, and he did not realize the other Marine was an officer, and so he just waved him off. He also said that he did not even have a pierced ear at the time, but had a pen in his ear. 

The Board finds the appellant's testimony that he waved off the officer's order to remove his earring to be credible, because NJP for the offense of wearing an earring while on liberty seems reasonable when viewed in the context of a blatant disregard of an order by an officer. Indeed, from the appellant's version of the event, it appears that no punitive action would have been taken had he obeyed the officer and removed the offending item, whether it was an earring or a pen. In this regard, the incident took place on base, the officer gave him a direct order, and, because the officer was in civilian clothes, it was not excusable to assume that he was not an officer; under these circumstances, it was pure folly for the appellant to have "waved him off." Therefore, although the Board finds the appellant's arguments to be credible, they do not justify his actions in a situation where he knew or should have known that there was at least a significant likelihood that the individual giving the order was an officer. The Board also points out that the appellant did not appeal this NJP.

In April 1995, the appellant received NJP for violation of a lawful general order by going to Mexico without the required special liberty pass. This incident occurred in December 1994, when the appellant drove himself and three companions to a bar in Mexico on a Saturday night. The appellant testified that his decision to go to Mexico had been made at the last minute, and he was therefore unable to sign up for permission. He intimated that this was a mere technicality; he said that such trips to Mexico were routine and frequent, and that that he would have been granted permission as a matter of course. This is not, however, consistent with the military records. The investigation report noted that the trip to Mexico had been "in violation of the squadron order." The record includes a summary of counseling entries in the appellant's training record, which included counseling on June 1, 1994, regarding "a squadron order on liberty in Mexico," which had been signed by the appellant. 

Moreover, the investigation reports show that a court-martial of the appellant had been planned based on this incident. One of the witnesses stated the appellant had wanted him to lie at this court-martial. Because the summary of disciplinary actions does not include any type of court-martial, however, it appears that the decision was instead to opt for NJP. The appellant testified that he was offered a discharge in lieu of a court-martial; if so, this must have been done informally, as there is no record of such an agreement. In any event, these actions demonstrate that the unauthorized trip to Mexico was not, in fact, a technical rule violation, but instead a significant violation which almost resulted in a court-martial. Thus, the Board finds that this was not a minor offense. 

Although most of the appellant's individual offenses may be considered to be minor, the other than honorable discharge was not given for an isolated minor offense. Taken as a whole, the repetitive offenses demonstrate a pattern of misconduct which was both willful and persistent. Moreover, his actions precluded the proper performance of his duties. The service department records depict an individual who, although having the capacity for excellent performance, was a chronic disciplinary problem and marginal performer who required constant supervision and was a disruptive influence to the unit over a considerable period of time. Thus, the Board finds that the appellant's misconduct interfered with the performance of his military duties, and, hence, was not minor. See Stringham, Cropper.

Moreover, there is little evidence that his service was "otherwise honest, faithful, and meritorious." The parties to the Joint Motion, and the appellant's former representative, referred to the appellant's "receipt" of the Good Conduct Medal as evidence that the appellant's service was honest, faithful and meritorious. The Board points out, however, that the appellant never received the Good Conduct Medal. The reference to that medal was contained in the "remarks" section of the DD Form 214, and not in the section for identifying the awards and decorations received. The reference to the Good Conduct Medal clearly was intended to show that the calculation period for that medal, if eventually awarded, would start on April 27, 1995. That date corresponds to the date of the last NJP received by the appellant, which in turn is consistent with the instructions regarding receipt of the medal. Again, those instructions require a three-year period of service that is not interrupted by a NJP, and specifies that if there is an NJP, the commencing period for the count of three years begins after the last NJP is issued. The appellant was discharged about 7 months after the commencement period, so he clearly could not meet the three-year requirement for the award of the Good Conduct Medal, and, unsurprisingly, this is undoubtedly why it is not listed in the section for identifying awards and decorations. The appellant did not receive a Good Conduct Medal in service or for his service. The Board is particularly troubled by the Appellant's representation to the United States Court of Appeals for Veterans Claims that he had received a Good Conduct Medal. Indeed, that false representation was one of the bases for the joint motion. 

The appellant also received the Sea Service Deployment Ribbon, despite the fact that it does not appear he met the criteria for the award of the decoration. In any event, the instructions governing the award of the ribbon do not indicate that honest, faithful or meritorious service play any role in whether the decoration is issued. Consequently, the award of the Sea Service Deployment Ribbon to the appellant is irrelevant to the current appeal.

The appellant received four letters of appreciation. Three of those were in 1993, and one in 1994 (prior to the Mexico incident). The basis for the letters is not available. Given the timing of the letters and the ambiguity as to their basis, the Board finds that they are of only marginal probative value in determining whether the appellant's service was otherwise honest, faithful and meritorious.

The appellant received the National Defense Service Medal, which is awarded for "honorable" service. Interestingly, a January 1993 entry in the service personnel records indicates that the medal was not issued. Assuming, however, that the DD Form 214 correctly lists the medal, the Board finds that the award, although positive evidence, does not serve to ultimately establish that the appellant's service was otherwise honest, faithful, or meritorious. The Board must weigh the receipt of a single medal with almost no criteria for its issuance (other than "honest" service between certain dates) against the appellant's documented actions in service. As noted above, his discipline and performance problems were of longstanding duration. He was noted to be a negative influence to his unit. There are no positive reports. Although the parties to the Joint Motion relied heavily on language in the reports noting that the appellant had the "ability" to be a good Marine, the parties ignored the remainder of the reports, which clearly indicated that he had not used that ability, and had become a performance and discipline problem. The Board finds that those reports are clearly against the claim, and that focusing on the prefatory comments while ignoring the actual contents of those reports is not appropriate. 

The burden is on the appellant to establish, by a preponderance of the evidence, that he has a qualifying discharge, but he has provided little evidence of honest, faithful, or meritorious service; rather, he simply contends that the reports of misconduct were exaggerated. Although he feels that he was singled out for punishment, an investigation of his allegations of racial discrimination in service found them to be without merit. Additionally, there is no service, such as in a theater of war, which could be considered, on its face, meritorious, and thus mitigate his misconduct. In this regard, although he served during a wartime period, his service was all domestic except for a period in Okinawa, Japan. The Board again notes that the only award he received that is favorable to his claim does not, when weighed against the longstanding and disruptive nature of his offenses, suffice to establish that his service was otherwise honest, faithful, or meritorious.

The Board notes in passing that the appellant's former representative, in April 2014, excerpted portions of an article from a military law journal indicating that the military considers service "honorable" when a service member has departed from required standards on occasion, particularly where the service member has had combat service. In this case, however, the appellant had no combat service. The Board also points out that the service department in this case has determined that the appellant's infractions were numerous and serious enough to warrant discharge. The Board finds the excerpt to be of no more than marginal probative value. 

There is also no evidence, nor has it been contended, that the appellant was insane at the time he committed the acts in question. See 38 C.F.R. § 3.12(b). His only argument concerning his mental status was that he was very young at the time. He was, however, 19 years old when he enlisted, and 22 years old when discharged. He described the Mexico incident as having occurred when he was 18 years old, but in fact, he was 21 years old at the time of that incident, and more than 11/2 years older than his three companions, whom he states subjected him to peer group pressure. Not only was he older than his companions, there also is no indication of coercion or force. 

Moreover, the Board must consider his conduct at the time of the offenses, not his testimony regarding his responsible conduct after service. Based on all the evidence, the Board concludes that the appellant's other than honorable discharge was due to willful and persistent misconduct, and such period of service is dishonorable for VA purposes and is a bar to VA compensation benefits based on such period of service. The weight of the evidence is against the claim; thus, the appellant has failed to establish, by a preponderance of the evidence, that he is a "veteran" (with a qualifying discharge), and the reasonable doubt doctrine is not for application. See Holmes, Aguilar. 



ORDER

The appellant's discharge from service was under dishonorable conditions, and constitutes a bar to VA compensation benefits; the appeal is denied. 



____________________________________________
JAMES L. MARCH
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs