William SEALS, Jr., Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–686.

United States Court of Veterans Appeals.

Nov. 1, 1995.

William Seals, pro se.

Mary Lou Keener, General Counsel, Atlanta, GA; Norman G. Cooper, Assistant General Counsel; Pamela L. Wood, Deputy Assistant General Counsel; and Elizabeth Milgram, Washington, DC, on the brief for the appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Judges.

IVERS, Judge, filed the opinion of the Court in which NEBEKER, Chief Judge, joined.

STEINBERG, Judge, filed an opinion concurring in part and dissenting in part.

IVERS, Judge:

William Seals, Jr., appeals a March 25, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied his claim for (1) an increase in rating for fusion of the right ankle with arthrodesis and traumatic arthritis (currently rated as 30% disabling); (2) an increase in rating for chronic osteomyelitis of the right foot and ankle (currently rated as 20% disabling); and (3) an extension beyond January 31, 1990, of a temporary total disability evaluation under the provisions of 38 C.F.R. § 4.30. William Seals, Jr., BVA 93–05550 (Mar. 25, 1993). Each party filed a brief. The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will vacate the decision of the BVA as to the issues of entitlement to increased ratings for fusion of the right ankle with arthrodesis and traumatic arthritis and osteomyelitis, will reverse as to the issue of entitlement to a temporary total disability evaluation, and will remand the case for readjudication consistent with this opinion.

## I. Factual Background

The appellant served in the United States Army from November 1968 to April 1970. R. at 72. He injured his ankle and, in December 1968, underwent a closed reduction of the right lateral malleolus. R. at 31, 35. "Malleolus" is a general term for the protuberance on either side of the ankle joint. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 975 (27th ed. 1988) [hereinafter DORLAND'S]. It appears from the record that while the appellant was being treated for his ankle injury, he removed the leg cast and the foot healed improperly. R. at 49, 55–56. The appellant was discharged due to physical disability as a result of the ankle injury. R. at 49, 72.

In October 1970, the VA regional office (RO) granted service connection (rated as 0%) for a fracture of the right ankle, but concluded that the malunion of the fractured ankle was the result of willful misconduct by the appellant because he had removed the cast against medical advice. R. at 77. In August 1980, a BVA decision determined that the residuals of the appellant's ankle problems were not due to his own willful misconduct. R. at 89. In October 1980, the RO granted service connection for malunion of the fracture of the right ankle with traumatic arthritis rated 100% from February 1, 1979, to March 31, 1979; rated 20% from April 1, 1979, to August 31, 1979; rated 100% from September 1, 1979, to December 31, 1979; and then rated 20% from January 1, 1980. R. at 93.

In April 1982, the appellant underwent surgery for arthrodesis of the right subtalar joint with an iliac bone graft. R. at 112–14. "Arthrodesis," is the "surgical fixation of a joint by a procedure designed to accomplish fusion of the joint surfaces by promoting the proliferation of bone cells." DORLAND'S at 148. "Subtalar" means beneath the talus, the ankle. Id. at 1602, 1661. The "iliac" pertains to the ilium which is the "expansive superior portion of the hip bone." Id. at 816–17. A medical report dated June 1982 noted that the appellant had had three right tibial talar fusions. R. at 125–28. In May 1983, the RO granted service connection for postoperative fusion of the right ankle with triple arthrodesis and traumatic arthritis rated at 100% from April 1982 and 30% from July 1983. R. at 170–71. In October 1986, the BVA denied an increased rating for residuals of a fusion of the right ankle, and denied an award of a temporary total disability rating based upon convalescence beyond January 31, 1984. R. at 173–79. In October 1988, the BVA again denied an increased rating for residuals of a fusion of the right ankle. R. at 183–90.

The appellant filed a December 1986 informal claim for total disability based on individual unemployability (TDIU) and an October 1988 TDIU application for increased compensation for his ankle disability. R. at 184, 192–94. In January 1989, the appellant requested a temporary 100% convalescence rating because he had been placed in an ankle cast. R. at 200. In February 1989, the RO granted a 100% rating based on the

need for convalescence from January 12, 1989, to March 1, 1989, and denied a TDIU rating. R. at 203. The RO granted several more extensions of the appellant's temporary 100% rating for the periods January 12, 1989, to May 1, 1989, June 20, 1989, to October 1, 1989, June 20, 1989, to November 1, 1989, and June 20, 1989, to February 1, 1990. R. at 234, 243, 257, 264. The appellant had surgery on his right foot and ankle in June 1989. R. at 238. In December 1989, the RO deferred, pending a VA examination, review of a claim for disability based upon osteomyelitis. R. at 264. Osteomyelitis is inflammation of a bone caused by a pus-producing organism. DORLAND'S at 1200, 1395.

In a VA medical progress report dated February 1990, it was noted that the appellant had permanent osteomyelitis of the right ankle. R. at 276. The RO on March 12, 1990, granted service connection for chronic osteomyelitis of the right foot and ankle (rated as 20% disabling), and continued the 30% rating for fusion of the right ankle. R. at 290. A March 26, 1990, medical notation indicates that the appellant is "totally disabled to attend any job." R. at 296. A March 27, 1990, medical notation indicates that the appellant had continued drainage of the ankle and required additional convalescence time. R. at 300. A May 29, 1990, medical notation states that the appellant was not able to return to work while there was drainage from the ankle. R. at 319.

In August 1990, the RO denied an increase in the rating for the right ankle fusion and osteomyelitis, and any need for convalescence due to surgery. R. at 322. The appellant filed a Notice of Disagreement (NOD). R. at 324. A Statement of the Case (SOC) was issued. R. at 325. A September 1990 RO decision confirmed the August 1990 decision. R. at 331. The appellant filed an NOD, and a supplemental SOC was issued. R. at 333–35. The appellant appealed to the BVA. R. at 337. In September 1990, the appellant underwent surgery for removal of "hardware" of the right foot, and irrigation and debridement of the right foot. R. at 344. An October 1990 medical notation indicates that he would require six months of convalescence. R. at 341. On October 23, 1990, the

RO granted a temporary 100% rating from September 21, 1990, until November 1, 1990, for fusion of the right ankle, arthrodesis, and traumatic arthritis. R. at 349. The appellant filed an appeal claiming that VA did not address the issue of his entitlement to a 100% rating from February 1990. R. at 356, 358.

In November 1990, the RO extended the temporary 100% rating for the right ankle fusion until December 1, 1990. R. at 365. In January 1991, the RO extended the temporary 100% rating through January 1, 1991. R. at 371. In March 1991, the RO noted that the appellant walked with "support shoes," and denied any increase in his permanent ratings. R. at 380. A supplemental SOC was issued. R. at 382. The appellant submitted a letter, dated April 1991, which stated that he was not wearing a "support shoe" but rather a "Low Profile Walker" which enabled him to walk. R. at 385. The appellant requested a temporary 100% disability rating from February 1990 and from December 1, 1990, because he was in "need of this Low P[r]ofile Walker to walk." R. at 385. He requested a hearing which was held at the RO in September 1991. R. at 388–401. During the hearing, the appellant testified that his ankle condition caused him pain and difficulty walking and standing, and that he had had periodic drainage from the ankle since 1989. R. at 391–92. The hearing officer continued the same ratings and denied extension of temporary 100% rating beyond February 1, 1990. R. at 419–20. The appellant's VA orthopedic medical records noted that on November 21, 1991, no drainage existed, but that there was diffuse low-grade erythema and tenderness in the middle of the right foot. R. at 432. The physician did not comment on the appellant's ability to maintain employment.

In December 1991, the RO continued the 30% rating for the ankle condition and the 20% rating for chronic osteomyelitis. R. at 435. The appellant disagreed with the decision, and a supplemental SOC was issued. R. at 437–38. He filed an appeal with the BVA. R. at 442. In his informal hearing presentation, the appellant requested a rating greater than 30%, for fusion of the right

ankle; a rating greater than 20% for chronic osteomyelitis of the right ankle; and extension of benefits under 38 C.F.R. § 4.30 for a temporary 100% rating beyond February 1, 1990. R. at 455. On March 25, 1993, the BVA denied entitlement to increased ratings for fusion of the right ankle with arthrodesis and chronic osteomyelitis of the right foot and ankle, and denied entitlement to an extension of a temporary total disability evaluation beyond January 31, 1990. *William Seals, Jr.*, BVA 93–05550 (Mar. 25, 1993). The appellant filed a timely appeal with the Court.

## II. Analysis

In his brief, the Secretary concedes that the case should be remanded on all three issues for further development of the reasons or bases for the BVA decision because (1) there is insufficient medical information in the record regarding the need for an increased rating due to possible constitutional symptoms resulting from the appellant's osteomyelitis; (2) VA requires additional development to determine whether the right ankle fusion requires a rating greater than 30%; and (3) the Board did not discuss medical notations in the record indicating the need for convalescent care beyond January 31, 1990. Secretary's Brief at 11–12.

### A. Claims for Increased Rating for Osteomyelitis and Fusion of the Right Ankle

■ The Court reviews the Board's findings of fact regarding new claims under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990); *see also Proscelle v. Derwinski*, 2 Vet.App. 629, 631–32 (1992) (claim for increase is new claim). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert*, 1 Vet.App. at 53. The Board must base its decisions on "all evidence and material of record," 38 U.S.C. § 7104(a), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C. § 7104(d)(1). *See Douglas v. Derwinski*, 2 Vet.App. 435, 438–39 (1992) (en banc); *Gilbert*, 1 Vet.App. at 56–57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting material evidence submitted by or on behalf of the claimant. *Gabrielson v. Brown*, 7 Vet.App. 36, 40 (1994); *Gilbert*, 1 Vet.App. at 57.

■ Where the record does not adequately reveal the current state of the appellant's disability and the claim is well grounded, the fulfillment of the statutory duty to assist under 38 U.S.C. § 5107(a) requires a thorough and contemporaneous medical examination. *See Suttmann v. Brown*, 5 Vet. App. 127, 138 (1993); *Green (Victor) v. Derwinski*, 1 Vet.App. 121, 124 (1991). Such an examination should include a review of "the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one." *Green*, 1 Vet.App. at 124; *see also Schafrath v. Derwinski*, 1 Vet.App. 589, 595 (1991); 38 C.F.R. § 4.2 (1994) (when "a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes").

■ In this case, the record does not contain a thorough and contemporaneous medical evaluation for the purpose of rating the appellant based on his current disability. Rather, the record contains the appellant's chronological treatment records which do not provide the Board with sufficient data to determine (1) whether the osteomyelitis of the right ankle requires an increased rating; whether the right ankle fusion with arthrodesis requires an increased rating and should be evaluated separately from the rating for osteomyelitis; and (2) whether the osteomyelitis is related to the appellant's other medical conditions in any way which would confer a higher rating. The Court finds that a remand is necessary so the Board, prior to determining whether rating increases are

warranted for the osteomyelitis and the right ankle fusion with arthrodesis, can obtain a contemporaneous medical examination, to include a medical opinion as to (1) how the right ankle fusion relates to the osteomyelitis of the ankle; (2) whether the ankle fusion is a separate condition from the osteomyelitis; (3) the degree of plantar flexion or dorsiflexion in the ankylosed right ankle, pursuant to 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5270; and (4) whether the appellant can expect full use of the ankle and foot with or without pain for purposes of employability. See Suttmann, Colvin, and Green, all supra.

▪ In addition, the BVA stated in its analysis that the board did not have to consider a 60% rating under 38 C.F.R. § 4.71a, DC 5000 because no evidence existed in the record of constitutional symptoms. Seals, BVA 93–05550, at 7. However, there is evidence in the record that the appellant has congestive heart failure, myocardial infarction, hypertension, diabetes, and rheumatic fever. R. at 213, 128, 238–39, 243, 258, 265, 290, 344. No medical opinion exists in the record indicating that these are not constitutional problems, and that they are not related to osteomyelitis. Thus, the Court holds that a remand is necessary in order that VA may obtain a medical examination determining whether, pursuant to 38 C.F.R. § 4.71a, DC 5000, a 60% rating due to constitutional symptoms or a 30% rating due to definite involucrum or sequestrum is warranted. See Suttmann, supra (the fulfillment of the statutory duty to assist requires a thorough and contemporaneous medical examination.). A thorough medical examination should "take into account the records of prior medical treatment, so that the evaluation of the [appellant's disabilities] will be a fully informed one." Green, 1 Vet.App. at 124.

### B. Claim for Temporary 100% Rating

▪ The standard of review this Court applies to a discretionary determination made by the Secretary is whether such determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See 38 U.S.C. § 7261(a)(3)(A); Foster v. Derwinski, 1 Vet.App. 393, 394 (1991). Pursuant to 38 C.F.R. § 4.30 (1994),

a total disability (100%) rating for convalescence "will be assigned without regard to other provisions of the rating schedule" when treatment for a service-connected disability results in (1) surgery necessitating at least one month of convalescence; (2) surgery with severe postoperative residuals including "therapeutic immobilization of one major joint or more"; or (3) immobilization by cast, without surgery, of one major joint or more. 38 C.F.R. § 4.30(a). In addition, under the regulation, a total rating may be extended for "1 or more months up to 6 months beyond the initial 6 months period ... under paragraph (a)(2) or (3) of this section upon approval of the Adjudication Officer." 38 C.F.R. § 4.30(b)(2).

▪ The issue presented for review by the Court is whether the BVA decision failed to take into account notations in the medical record of the appellant's incapacity to work after February 1, 1990: a March 26, 1990, medical notation indicating that the appellant was "totally disabled to attend any job"; a March 27, 1990, medical notation indicating that the appellant required additional convalescent time; and an October 1990 medical notation indicating that the appellant required six months of convalescence. The Board failed to do so and merely substituted its own medical judgment, stating:

> However, the existence of the osteomyelitis does not establish that the appellant was in need of further convalescence. The clinical record indicates the appellant made a good recovery from the surgical operation by this time. Also, we stress that X-rays of the right foot in February 1990 indicated a good surgical result. The radiological impression was stable appearance of the right ankle. Casting had been discontinued in January 1990.

Seals, BVA 93–05550, at 9. The medical records relied on by the Board in support of its decision, and now also relied upon by the dissent, infra, predate the March 1990 medical notes indicating the appellant's total disability and a need for an extended period of convalescence. Thus, the BVA, at the time of its March 25, 1993, decision, had before it all the evidence needed to direct the extension of the convalescence period at issue here

pursuant to 38 C.F.R. § 4.30 (1994). That evidence included the recommendations of the appellant's physicians (R. at 296, 300, 319, 341, 344), the appellant's testimony (R. at 391–92), and the appellant's NODs in connection with the RO denials (R. at 324, 333–35, 356–58, 385). The Board in simply ignoring the evidence, acted arbitrarily and capriciously in not granting or directing the grant of temporary total disability for convalescence. Therefore, the Court holds that the decision of the Board was "arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law" in denying an extension of the appellant's total disability rating and in failing further to evaluate the appellant for a total and permanent disability rating, and the Court will reverse that portion of the decision. *See Foster, and Gilbert, both supra.* In its March 1993 decision, the Board stated that the appellant did not contest the termination of the temporary total rating on December 31, 1990. *Seals,* BVA 93–05550, at 3. This conclusion was unwarranted. *See, e.g.,* R. at 449 (statement of accredited representative seeking temporary total disability benefits "beyond 2/1/90"). The BVA, on remand, will provide benefits pursuant to 38 C.F.R. § 4.30 for the convalescence periods indicated in the medical record from February 1, 1990, to September 21, 1990, and from December 31, 1990, through April 30, 1991, and will evaluate the appellant's status after May 1, 1991.

### III. CONCLUSION

For the reasons stated above, the March 25, 1993, decision of the BVA is VACATED as to the issues of increased rating for osteomyelitis of the right foot and ankle and for fusion of the right ankle with arthrodesis and traumatic arthritis, and REVERSED as to the issue of a temporary total disability, and the case is REMANDED for readjudication consistent with this opinion.

STEINBERG, *Judge,* concurring in part and dissenting in part:

I concur in the result in the majority opinion insofar as it vacates the March 25, 1993,

Board of Veterans' Appeals (BVA or Board) decision and remands for further development and readjudication on the issue of an increased rating for osteomyelitis. However, I dissent because I believe the opinion both goes too far and does not go far enough as to errors made in the BVA decision.

First, I dissent from the majority's reversal and direction to the BVA to award temporary 100% disability compensation. Rather, I believe that the BVA decision should be vacated and the matter remanded for further adjudication. The veteran had surgery in June 1989, and the Department of Veterans Affairs (VA) awarded him temporary 100% disability compensation for the periods from January 12, 1989, to May 1, 1989, and from June 20, 1989, to February 1, 1990. He then had surgery in September 1990 and received temporary 100% disability compensation from October 23, 1990, to December 31, 1990. In the decision on appeal, the BVA expressly stated that it did not adjudicate the issue of temporary 100% disability compensation beyond December 31, 1990, because the veteran had not contested such compensation relative to his September 1990 surgery. The BVA erred in limiting its adjudication to the time period before September 1990, both because the appellant's representative had stated that he sought 100% compensation "beyond 2/1/90" and did not limit it to "prior to September 1990", and because VA had treated the claims for 100% convalescent ratings as part of the same case.[1] Hence, this matter should be remanded for initial adjudication by the Board.

Because the BVA should have considered the issue of temporary 100% disability compensation beyond September 1990 but did not, the Court has no factual basis for judicial review and should remand, rather than reverse, for the BVA to address in the first instance the issue of post–September–1990 temporary 100% disability compensation. *See Servello v. Derwinski,* 3 Vet.App. 196, 200–01 (1992) (remanding claim to BVA where Board had not evaluated relevant evi-

---

1. *See, e.g.,* R. at 374, Supplemental Statement of the Case to the January 1991 Department of Veterans Affairs regional office decision termi-

nating temporary 100% disability payments on December 31, 1990.

dence); *Myers v. Derwinski*, 1 Vet.App. 127, 130 (1991). This Court is not an initial trier of fact. *See* 38 U.S.C. § 7261(c) ("In no event shall findings of fact made by the Secretary or the [BVA] be subject to trial de novo by the Court."); *Landicho v. Brown*, 7 Vet.App. 42, 48 (1994); *Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991).

The reversal in the majority opinion also covers temporary 100% disability compensation for the time period "indicated in the medical record from February 1, 1990, to September 21, 1990". I believe that remand rather than reversal is in order as to this period so as to allow the Board an opportunity to provide an adequate statement of reasons or bases as to the March 1990 medical statements (R. at 296, 300), which opined that the veteran was 100% disabled and needed approximately three months of additional convalescence time and which were not addressed by the Board. Reversal as to temporary 100% disability compensation for this period is not appropriate because the Board had a plausible basis (clinical records and x-ray reports, R. at 248, 253, 262, 282–84) [2] for denying temporary 100% disability compensation for this time period. *See* 38 U.S.C. § 7261(a)(4); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990).

Finally, I would also make clear that on remand the BVA is required to adjudicate the question of a higher rating for the right-ankle disability. The BVA appeared to indicate that the issue of a higher rating for the right ankle is moot because the veteran already has a combined rating of 40% for the right foot (including the 20% rating for osteomyelitis), and because the rating cannot be higher due to the "amputation rule" in 38 C.F.R. § 4.68 (1994). R. at 14. A higher rating for right-ankle fusion is not moot, however, because it is possible that the veteran's osteomyelitis will improve at some time in the future and receive a lower rating. Therefore, the Court should remand for the BVA to determine if the ankle fusion should

**2.** The majority correctly states that the clinical records and x-ray reports referred to by the Board predate the March 1990 medical reports. However, I am not prepared to find, especially without analysis, that there was no plausible basis in the record for the Board's interpretation

be evaluated at 40% regardless of the rating for osteomyelitis.

For the above reasons, I respectfully dissent from the Court's opinion to the extent noted.

that the earlier medical records indicated that the veteran had recovered from the June 1989 surgery and for the Board's conclusion that a schedular rating was therefore appropriate as of February 1990.