**Donald L. STRINGHAM, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–1159.

United States Court of Veterans Appeals.

Dec. 20, 1995.

John F. Zink was on the brief, Louisville, KY, for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel; and A.M. Fent were on the pleadings, Washington, DC, for appellee.

Before KRAMER, MANKIN, and HOLDAWAY, JJ.

KRAMER, Judge:

The appellant, Donald L. Stringham, appeals a September 27, 1994, decision of the Board of Veterans' Appeals (BVA or Board) which found him ineligible for disability compensation because of the character of his discharge. Record (R.) at 5–13. The Court has jurisdiction under 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the Board's decision.

## I. BACKGROUND

The appellant served on active duty from February 1968 to August 1970. R. at 56–9. He received an "undesirable discharge" in August 1970. R. at 59. The record on appeal (ROA) shows that the appellant received four Article 15, Uniform Code of Military Justice (UCMJ), nonjudicial punishments for violations of Article 86, UCMJ, absence without official leave (AWOL) (R. at 60–74, 85), and one Article 15, UCMJ, nonjudicial punishment for violation of Article 92, failure to obey a lawful order (R. at 75–76). In July 1990, the RO granted service connection for post-traumatic stress disorder (PTSD) for the purposes of medical care eligibility under chapter 17, title 38, U.S.Code R. at 188–91.

On December 28, 1992, the Court issued a decision remanding a June 1991 BVA decision which is not the subject of the present appeal. The remand decision directed the BVA to correct several deficiencies in its decision. First, the BVA was directed to provide reasons or bases for the BVA's finding of "willful and persistent misconduct" under 38 C.F.R. § 3.12(d)(4) (1994). This finding, in turn, had constituted the basis for the Secretary's determination that the appellant was ineligible for disability compensation benefits because his discharge from military service was under dishonorable conditions. See 38 U.S.C. 101(2); 38 C.F.R. § 3.12(a), (b). Second, the BVA was directed to consider the minor-offense exception contained in 38 C.F.R. § 3.12(d)(4). Finally, the BVA was directed to address the insanity exception contained in 38 C.F.R. § 3.12(b).

Pursuant to the Court remand and after further case development, the BVA issued a decision on September 27, 1994, which found the appellant ineligible for disability compensation because of the character of his discharge. R. at 5–13. In making this determination, the BVA again found that the appellant's discharge was issued under dishonorable conditions based upon "willful and persistent misconduct." R. at 8. The Board also found that neither the minor-offense exception (§ 3.12(d)(4)) nor the insanity exception (§ 3.12(b)) was applicable. The findings from the September 27, 1994 BVA decision are the subject of this appeal.

## II. ANALYSIS

The BVA's determination whether a discharge is based on willful and persistent misconduct is a matter of fact which the Court reviews under the "clearly erroneous" standard of review. See 38 U.S.C. § 7261(a)(4); Cropper v. Brown, 6 Vet.App. 450, 452 (1994). Under this standard "if there is a 'plausible' basis in the record for

the factual determinations of the BVA ... [the Court] cannot overturn them." *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990); *see Cropper, supra.* In support of its findings of "persistent" misconduct, the Board points to a seven-month period, from February through August 1970, when the appellant was AWOL several times and failed to obey a lawful order. R. at 10. In support of its findings of "willful" misconduct, the Board stated that the appellant offered "nothing which would indicate that the circumstances were beyond his control or that he was unable to seek assistance for his problems." *Ibid.* The Board also noted that the appellant had accepted nonjudicial punishment under UCMJ Article 15 without explanation or appeal. *Ibid.* Although some of these reasons might better have been applied to both findings rather than used discretely, such error, if any, was nonprejudicial to the appellant because the Court is convinced that the BVA's findings, as is, are both plausible and adequately supported. *See Gilbert, supra.*

■ As to the minor-offense exception, the Board determined, in essence, that such an exception could be applicable only in the case of a single offense and that where, as here, there were multiple instances of AWOL and one instance of failure to obey an order, the exception could not apply. Under 38 C.F.R. § 3.12(d)(4), "[a] discharge because of *a* minor offense will not, however, be considered willful and *persistent* misconduct if service was otherwise honest, faithful and meritorious" (emphasis added). This language raises the question as to whether a single offense can ever constitute persistent misconduct. It is not necessary, however, to decide this question. Even assuming, without deciding, that the minor-offense exception can apply to multiple offenses, all of the appellant's offenses, as a matter of law, are not minor because by definition they "were the type of offenses that would interfere with [the] appellant's military duties, indeed preclude their performance, and thus could not constitute a minor offense." *Cropper*, 6 Vet.App. at 452–53.

■ The insanity exception is warranted "if it is established to the satisfaction of the Secretary that, at the time of the commission of an offense leading to a person's ... discharge ... that person was insane." 38 U.S.C. § 5303(b). Under this language, both the acts leading to discharge and the insanity must occur simultaneously. Both the existence of insanity and its simultaneous temporal relationship to the commission of an offense must be established to the Secretary's satisfaction; a test suggesting Secretarial discretion. The standard of review this Court applies to a discretionary determination made by the Secretary is whether such determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 38 U.S.C. § 7261(a)(3)(A); *Seals v. Brown*, 8 Vet.App. 291, 296 (1995); *Foster v. Derwinski*, 1 Vet. App. 393, 394 (1991). "The scope of review under the 'arbitrary and capricious' standard is narrow, and a court is not to substitute its judgment for that of the agency.... [T]he agency must examine the relevant data and articulate a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.' " *Scott v. Brown*, 7 Vet.App. 184, 190 (1994) (citations omitted). Despite the apparent discretion provided to the Secretary under 38 U.S.C. § 5303(b), 38 C.F.R. § 3.12(b), promulgated under its authority, removes the bar of a discharge under dishonorable conditions to the payment of pension, compensation, and dependency and indemnity benefits if it is "found" that the person was insane at the time of committing the offense leading to such discharge. In addition, 38 C.F.R. § 3.354(b), which apparently is directed at insanity determinations under section 3.12(b), directs the rating board to base its decision on all the evidence and to apply the insanity definition under 38 C.F.R. § 3.354(a). Furthermore, *Cropper* implied that an insanity determination under 38 C.F.R. § 3.12(b) is factual in nature, thus dictating that the standard of review for such a determination is "clearly erroneous," *see Cropper*, 6 Vet.App. at 454 (finding that "[t]he Board is ultimately responsible for weighing the probative value of evidence [of insanity]"). Finally, the Court in *Zang v. Brown*, 8 Vet.App. 246 (1995), held that the existence of insanity, as defined under 38 C.F.R. § 3.354(a), at the time of the commission of an act, negates

intent so as to preclude that act from constituting willful misconduct under 38 C.F.R. § 3.1(n) (8 Vet.App. at 252); and that a determination relating to such existence is factual in nature, necessitating the "clearly erroneous" standard of review (8 Vet.App. at 254). *See Gilbert,* 1 Vet.App. at 53.

■ Based on this regulatory and case-law template, the Court holds that: the Secretary permissibly limited his 38 U.S.C. § 5303(b) discretion in promulgating 38 C.F.R. §§ 3.12(b) and 3.354(b), that an insanity determination under these C.F.R. provisions is a question of fact, and there is a plausible basis in the record for the BVA's implicit factual determination that there was no simultaneous temporal relationship between any insanity and the appellant's commission of offenses. In this regard, the Board stated:

> During his service entrance examination, the appellant answered in the affirmative when asked if he then had, or had ever had, depression or excessive worry or nervous trouble of any sort. A psychiatric evaluation, however, was normal; and his service medical records are otherwise negative for any relevant complaints or clinical findings. There were simply no findings of a psychiatric disorder of any kind, let alone indications of insanity. Although he now has post-traumatic stress disorder as a result of his experiences in the Republic of Vietnam, the initial manifestations were not reported until many years after service, and there are no findings to show that they in any way affected his demeanor in service.

■ While the Court is unable to find the psychiatric evaluation in the ROA (the parties make no reference to such an evaluation in their briefs) and further notes that the appellant has been granted service connection for PTSD for purposes of medical care eligibility under chapter 17, title 38, U.S.Code, there is simply no medical evidence of record to show a relationship between any mental disease, including PTSD, and the appellant's conduct. In this regard, the appellant cites the BVA's failure to develop the record adequately, especially with regard to obtaining additional medical evidence, stating, "[T]he Court ordered that the case then be remanded for the specific development of additional evidence as to the possible effects of PTSD with regards to insanity at the time of the offense." Appellant's Brief at 17. The Court's decision of December 1992, as indicated above, however, did not order such development. Nor could it now properly do so. Here, the battle is being waged over the appellant's status as a veteran. The burden is on the appellant to show such status by a preponderance of the evidence. *See Aguilar v. Derwinski,* 2 Vet.App. 21, 23 (1991). To do so here requires that the appellant submit competent medical evidence that he was insane at the time of his offense. *See Espiritu v. Derwinski,* 2 Vet. App. 492, 494 (1992); *see also Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993). Furthermore, the determination of status is preliminary to a determination of whether a well-grounded claim has been submitted, *see Aguilar, supra,* and the duty to assist attaches only after a well-grounded claim has been submitted. 38 U.S.C. § 5107.

### III. CONCLUSION

Upon consideration of the above, the Court holds that the appellant has not demonstrated that the BVA committed either factual or legal error which requires reversal or remand. *See* 38 U.S.C. § 7261(b). Therefore, the September 27, 1994, BVA decision is AFFIRMED.