﻿Citation Nr: AXXXXXXXX
Decision Date: 12/17/18 Archive Date: 12/17/18

DOCKET NO. 180801-109
DATE: December 17, 2018
ORDER
The character of the Veteran’s discharge for his period of active duty service from June 2006 to November 2012 is a bar to VA benefits.
The claim of entitlement to service connection, for treatment purposes only under Chapter 17 of title 18 United States Code, for bilateral hearing loss, is denied.
The claim of entitlement to service connection, for treatment purposes only under Chapter 17 of title 18 United States Code, for a traumatic brain injury (TBI), is denied.
FINDINGS OF FACT
1. The Veteran’s discharge from active military service under other than honorable conditions for the period of active duty June 13, 2006, to November 27, 2012, is considered dishonorable.
2. The Veteran does not have a current diagnosis of hearing loss.
3. The Veteran does not have a current diagnosis of TBI.
CONCLUSIONS OF LAW
1. The character of the Veteran’s discharge for his period of active duty service from June 2006 to November 2012 is a bar to VA benefits, except for under Chapter 17 of 38 U.S.C. 38 U.S.C. §§ 101(2), 5303 (2012); 38 C.F.R. §§ 3.1(d),3.3, 3.4, 3.5, 3.12(d), 3.301, 3.354 (2018).
2. The criteria for service connection for bilateral hearing loss have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1117, 1154, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.317 (2018).
3. The criteria for service connection for a traumatic brain injury have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1117, 1154, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.317 (2018).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran had honorable active duty service, specifically active duty for training (ACDUTRA), with the United States Army from July 2005 to December 2005. He also had active service with the United States Army from June 2006 to November 2012, discharged under other than honorable conditions. The Veteran is a Gulf War Era Veteran with service in Southwest Asia (SWA). 
This matter is before the Board of Veterans’ Appeals (Board) on appeal from a December 2016 decision of the Department of Veterans Affairs (VA), finding that the Veteran’s discharge, for his active service dated June 2006 to November 2012, was dishonorable for VA purposes, and a December 2016 rating decision issued by the Department of Veterans Affairs (VA), denying service connection for bilateral hearing loss and a traumatic brain injury, for the purposes of receiving treatment. 
The Veteran elected to participate in the VA initiative under the Appeals Modernization Act (AMA), and requested a higher-level review. The June 2018 higher-level review decision affirmed the findings of the December 2016 decision regarding the Veteran’s characterization of service and a July 2018 rating decision affirmed the December 2016 rating decision regarding entitlement to service connection, for treatment purposes, for bilateral hearing loss and a traumatic brain injury. 
The Veteran elected a Direct Review, which is based upon the evidence of record at the time of the prior decision. See Correspondence, dated August 2018.
VA has a duty to notify and assist the Veteran in substantiating a claim for VA benefits. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2018).
The Veteran’s representative, in his May 2017 brief to the Board, notes that there are, possibly, investigative records that could absolve the Veteran of any guilt. While VA’s duty to assist includes making as many requests as are necessary to obtain relevant record from a Federal department or agency, the Board notes that the duty to assist is not a one-way street. Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). “If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence.” Id. The Veteran has not noted specific evidence, or investigative records or agencies, that provide specific evidence that would absolve him of any wrong-doing. As such, the Board finds that the RO met its duty regarding the duty to assist in this regard. 
The Veteran’s representative further argued, in his May 2017 brief, that VA erred in its duty to assist the Veteran insomuch he asserts that where the records tend to show more than one period of service and bar for benefits exist, the VA is obligated to undertake development for possible conditional discharge. The Board finds, however, that the Representatives assertion, that VA erred, is not the case. 38 C.F.R. § 3.13 states that except under specific circumstances, the entire period of service constitutes one period of service and entitlement will be determined by the character of the final termination of such period of active service. 38 C.F.R. § 3.13(c) (2018). The Veteran’s DD-214 affirms that June 2006 to November 2012 is one period of service, and that the Army deemed that period to be under other than honorable conditions. The Board has no jurisdiction to alter the Veteran’s character of discharge. The Veteran’s military personnel file was obtained and reviewed in making the decision concerning character of service. VA made an administrative finding regarding character of discharge for benefits based upon the Army’s determination, in addition to the consideration that the Veteran had a pattern of violent behavior. See Military Personnel Records, dated May 2012, February 2012. Neither the Veteran, nor his representative, has proffered specific evidence that would alter VA’s administrative findings. See Wood, 1 Vet. App. at 193. Moreover, the Representative cited VA Adjudication Procedure Manual M21-1, not codified or case law, to assert a duty to assist. The cited manual is not binding on the Board. As such, the Board finds that VA’s duty to assist in this regard has been met.
Aside from the above, the Veteran has not raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that “the Board’s obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board.”); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).
1. Character of the Veteran’s discharge for his period of active duty service from June 2006 to November 2012
In order to qualify for VA benefits, a claimant must demonstrate that he was a veteran. See Cropper v. Brown, 6 Vet. App. 450, 452 (1994). The term "veteran" means a person who served in the active military, naval, or air service, and who was discharged or released there from under conditions other than dishonorable. See 38 U.S.C. § 101(2) (2012); 38 C.F.R. § 3.1(d) (2018). 
The term 'discharge or release' includes: (1) retirement from the active military, naval or air service, and (2) the satisfactory completion of the period of active military, naval or air service for which a person was obligated at the time of entry into such service in the case of a person who, due to enlistment or reenlistment, was not awarded a discharge or release from such period of service at the time of such completion thereof and who, at such time, would otherwise have been eligible for the award of a discharge or release under conditions other than dishonorable. 38 U.S.C. § 101(18) (2012). 
A discharge or release to reenlist is a conditional discharge if it was issued during World War I, World War II, the Korean conflict, the Vietnam era, or peacetime service. 38 C.F.R. § 3.13(a) (2018). Typically, the entire period of service constitutes one period of service and entitlement will be determined by the character of the final termination of such period of service. 38 C.F.R. § 3.13(b) (2018). A person may be considered to have been unconditionally discharged or released from active military, naval, or air service during one of the above timeframes, however. 38 C.F.R. § 3.13(c) (2018). The requirements for such a constructive unconditional discharge are: (1) the person served in the active military, naval, or air service for the period of time the person was obligated to serve at the time of entry into service, (2) the person was not discharged or released from such service at the time of completing that period of obligation due to an intervening enlistment or reenlistment, and (3) the person would have been eligible for a discharge or release under conditions other than dishonorable at that time except for the intervening enlistment or reenlistment. Id. If these requirements are met, the entire period of service does not constitute one period of service. 38 C.F.R. § 3.13(b) (2018). This has been interpreted to suggest that the initial obligated period of service and the reenlistment period beyond the initial obligated period may be considered distinct periods of service when the last period of service is terminated under dishonorable conditions. See VAOGCPREC 8-2000, fn. 2 (July 25, 2000). 
It is dishonorable when a person is discharged or released under one of the following conditions: (1) as a conscientious objector who refused to perform military duty, wear the uniform, or comply with lawful order of competent military authorities; (2) by reason of the sentence of a general court-martial; (3) resignation by an officer for the good of the service; (4) as a deserter; (5) as an alien during a period of hostilities, where it is affirmatively shown that the person requested his release; and (6) by reason of a discharge under other than honorable conditions issued as a result of an absence without official leave (AWOL) for a continuous period of at least 180 days, unless there were compelling circumstances to warrant the prolonged unauthorized absence. 38 C.F.R. § 3.12(c) (2018). 
Additionally, a discharge or release is considered to have been under dishonorable conditions if it was because of one of the following offenses: (1) acceptance of an undesirable discharge to escape trial by general court-martial; (2) mutiny or spying; (3) an offense involving moral turpitude; (4) willful and persistent misconduct; and (5) homosexual acts involving aggravating circumstances or other factors affecting the performance of duty. 38 U.S.C. § 5303 (2012); 38 C.F.R. § 3.12(d) (2018). 
An offense involving moral turpitude includes, generally, the conviction of a felony. 38 C.F.R. § 3.12 (d) (2018). "Willful misconduct" is an act involving conscious wrongdoing or known prohibited action. 38 C.F.R. § 3.1(n) (2018). It involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences. Id. Willful and persistent misconduct includes a discharge under other than honorable conditions determined to be issued because of willful and persistent misconduct. 38 C.F.R. § 3.12(d) (2018). However, willful and persistent conduct excludes a discharge because of a minor offense if service was otherwise honest, faithful, and meritorious. Id. 
An offense that "interfere[s] with [the] appellant's military duties, indeed preclude[s] their performance... [does] not constitute a minor offense." Stringham v. Brown, 8 Vet. App. 445 (1995). An AWOL thus has been found on numerous occasions to constitute willful and persistent misconduct rather than a minor offense. See Struck v. Brown, 9 Vet. App. 145 (1996) (affirming the Board's finding that two and a half months of AWOL out of nine months of service was willful and persistent misconduct); Stringham, 8 Vet. App. at 445 (upholding the Board's finding that four AWOL violations and a failure to obey a lawful order was willful and persistent misconduct); Winter v. Principi, 4 Vet. App. 29 (1993) (affirming the Board's finding that 32 days of unauthorized absence out of 176 days of service was severe misconduct, and, by analogy, persistent misconduct. 
As it prevents attainment of Veteran status, a discharge under any of the aforementioned conditions pursuant to 38 C.F.R. § 3.12(c) or offenses pursuant to 38 C.F.R. § 3.12(d) generally is a bar to VA benefits. 38 C.F.R. § 3.12(b) (2018). There are two instances when this is not true, however. 
The first instance is an exception to the general rule for a person who is found to have been insane at the time he committed the act(s) precipitating his discharge or release. 38 U.S.C. § 5303(b) (2012); 38 C.F.R. § 3.12(b) (2018); see also Zang v. Brown, 8 Vet. App. 246 (1995). Establishing causal connection between the insanity and the act(s) is not required. Struck, 9 Vet. App. at 145; Helige v. Principi, 4 Vet. App. 32 (1993); VAOPGCPREC 20-97 (May 22, 1997). The burden is on the appellant to submit sufficient evidence of his insanity. Stringham, 8 Vet. App. at 445 (2018). 
Mental illness is not identical to insanity. Beck v. West, 13 Vet. App. 535 (2000). The predicate for insane behavior for VA purposes generally is a persistent morbid condition of the mind characterized by a derangement of one or more of the mental faculties to the extent that the person is unable to understand the nature, full import, and consequences of his acts such that he is a danger to himself or others. VAOPGCPREC 20-97. In effect, he is rendered incapable of managing himself or his affairs, a concept akin to the level of incompetency generally supporting appointment of a guardian. Id. 
An insane person therefore is one who: (1) while not mentally defective or constitutionally psychopathic, except when a psychosis has been engrafted upon such basic condition, exhibits, due to disease, a more or less prolonged deviation from his normal method of behavior; (2) interferes with the peace of society; or (3) has so departed (become antisocial) from the accepted standards of the community to which by birth and education he belongs as to lack the adaptability to make further adjustment to the social customs of the community in which he resides. 38 C.F.R. § 3.354 (2018). 
The term 'constitutionally psychopathic' refers to a condition that may be described as an antisocial personality disorder. VAOPGCPREC 20-97. Behavior involving a minor episode or episodes of disorderly conduct or eccentricity does not constitute prolonged deviation from a person's normal method of behavior. Id. The phrase 'interferes with the peace of society' refers to behavior which disrupts the legal order of society. Id. The term 'become antisocial' refers to the development of behavior that was hostile or harmful to others in a manner which deviated sharply from the social norm and that was not attributable to a personality disorder. Id. 
The second instance involves setting aside the bar to VA benefits imposed under 38 C.F.R. § 3.12(d), but not 38 C.F.R. § 3.12(c), when certain requirements are met by a discharge review board established under 10 U.S.C. § 1553 in issuing an upgraded honorable or general discharge on or after October 8, 1977. 38 C.F.R. § 3.12(g) (2018). If the same certain requirements are satisfied, the bar to VA benefits also is removed when an upgraded honorable or general discharge is issued under: (1) the President's directive of January 19, 1977, initiating further action with respect to Presidential Proclamation 4313 of September 16, 1974; or (2) the Department of Defense's Special Discharge Review Program effective April 5, 1977; or (3) any discharge review program implemented after April 5, 1977, and not made applicable to all persons administratively discharged or released from active military, naval, or air service under other than honorable conditions. 38 C.F.R. § 3.12(h) (2018).
As stated above, the Veteran had honorable active duty service with the United States Army, specifically ACDUTRA, from July 2005 to December 2005. He also had active service with the United States Army from June 2006 until November 2012, at which time he was discharged under other than honorable conditions.
In April 2012, the Veteran and his spouse were interviewed for an incident involving a verbal altercation between the two of them. The altercation became physical, with the Veteran assaulting his wife. See Military Personnel Record, dated April 2012. His wife reported to the investigator that the first incident of physical assault occurred in 2009 and was ongoing until the time of this incident. Id.
In May 2012, the Veteran was reprimanded for assaulting his wife, including striking her in the face and choking her. The Veteran’s reprimand was permanently filed in his personnel folder due to a pattern of violent behavior by the Veteran. In addition to this incident, the Veteran had attacked his wife on other occasions, including incidents where he kicked and choked her, head-butted her, and threw a laptop computer at her. The reason that the Veteran was not court-martialed was that his wife was either unwilling or unavailable to testify against him. See Military Personnel Record, dated May 2012.
In November 2012, the Veteran was ordered for transition processing. See Military Personnel Record, dated November 2012.
Finally, a December 2016 VA Administrative Decision notes that on January 4, 2012, the Veteran was cited for wrongfully and willfully impersonating an official of the government by publicly wearing and displaying a military police badge and other paraphernalia, including what appeared to be a firearm, and declaring himself to be performing duties of a military police officer. 
The preponderance of the above evidence demonstrates that the Veteran’s character of discharge for the period of service from June 2006 to November 2012 is a bar to VA benefits, except those under Chapter 17 of 38 U.S.C. Service records demonstrate that he was ordered for transition and discharge under Other than Honorable circumstances due to misconduct. Specifically, the Veteran had a history of verbal and physical altercations with his spouse, and he only avoided a May 2012 court martial due to his spouse’s unavailability to testify against him. Therefore, the evidence reflects that the appellant was discharged for a pattern of persistent and willful misconduct. 38 C.F.R. § 3.12(d) (2018). As noted above, a discharge due to willful and persistent misconduct, to include those under other than honorable conditions (as in this case), will be considered to have been issued under dishonorable conditions. 38 C.F.R. § 3.12(d)(4) (2018). Discharge under dishonorable conditions is a bar to VA benefits (in this case, other than those under Chapter 17) unless it is found that the service member was insane at the time of the commission of the offense causing such discharge or release. See 38 U.S.C. § 5303(b) (2012); 38 C.F.R. § 3.12(b) (2018).
The Veteran’s representative argued, in his May 2017 appellate brief to the Board, that the RO was in clear error, as the Veteran had a diagnosis of posttraumatic stress disorder (PTSD) with severe symptoms. However, medical records indicate that the Veteran was actively attending treatment for anger management, denying any suicidal or homicidal ideation in the years preceding the incident in question. See Service Treatment Records, dated March 2010, November 2009. Moreover, he presented without depression, increased energy, or hallucinations. Id. As such, the Board does not find this argument persuasive. Moreover, as already noted, mental illness is not akin to insanity. Beck, 13 Vet. App. at 535. The assertion that the appellant endured stressful events during service is not evidence of insanity. The burden is on the appellant to submit competent medical evidence that he was insane at the time of his offenses. Stringham, 8 Vet. App. at 449. Presently, no medical evidence of the appellant being “insane,” or unable to act in an intentional manner, has been submitted. See generally, Zang, 8 Vet. App. at 254 (explaining that a determination of whether a person is insane is in effect a determination of whether that person’s actions were intentional and thus the result of willful misconduct). 
The Board has considered the statements of the Veteran’s attorney that the Veteran’s spouse “possibly falsified testimony to law enforcement,” implying that there are records to confirm this. As noted above, the Board finds that the duty to assist is not a one-way street and, and if the Veteran is aware of such records, it is ultimately his responsibility to notify the Board of the agency and their existence. Wood, 1 Vet. App. at 193. Moreover, the Board does not preside over criminal proceedings, nor does it determine guilt or innocence. Rather, it determines the relative weight of evidence on specific issues relevant to 38 of the United States Code. 38 U.S.C. § 7104 (2012); 38 C.F.R. § 20.101 (2018). 
The Board further notes that the appellant’s character of discharge has not been upgraded at any time by his service department, by any discharge review board, or by a Presidential directive, nor does the record reflect that the Veteran has applied for an upgraded character of discharge. As such, the second exception regarding bar of VA benefits due to character of discharge is not applicable. See 38 C.F.R. §§ 3.12(g), (h) (2018).
Accordingly, the Board finds, by a preponderance of the evidence, that the appellant’s misconduct during service was willful and persistent. Therefore, the Board concludes that his discharge, for purposes of entitlement to VA benefits, is considered to have been under dishonorable conditions and he is barred from VA benefits, except for health care and related benefits under chapter 17 of title 38 U.S.C. 38 U.S.C. § 5303 (2012); 38 C.F.R. §§ 3.12(d)(4), 3.360 (2018).
Service Connection
Service connection is warranted where the evidence of record established that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if preexisting, such service, was aggravated thereby. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303(a) (2018). 
Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. § 1110 (2012); 38 C.F.R. § 3.303 (2018). “To establish a right to compensation for a present disability, a veteran must show: ‘(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service’ – the so-called ‘nexus’ requirement.” Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).
Service connection may also be established for a current disability on the basis of a presumption that certain chronic diseases manifesting themselves to a certain degree within a certain time after service must have had their onset in service. 38 U.S.C. §§ 1112, 1113, 1137 (2012); 38 C.F.R. §§ 3.303, 3.307, 3.309(a) (2018). Presumptive service connection can be established based upon continuity of symptomatology for those chronic diseases set forth in 38 C.F.R. § 3.309(a). 38 C.F.R. §§ 3.307(a)(2)-(3), 3.309(a) (2018); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 
Where a veteran has served for 90 days or more during a period of war, or during peacetime service after January1, 1947, and a chronic disorder, such as sensorineural hearing loss, becomes manifest to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C. §§ 1112, 1137; 38 C.F.R. §§ 3.307, 3.309(a).
In order to show a chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word “chronic.” When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support a claim. There must be competent medical evidence unless the evidence relates to a condition as to which lay observation is competent to identify its existence. See 38 C.F.R. § 3.303 (2018).
Specific presumptive service connection is available to Veterans who served during the Persian Gulf War and exhibit objective indications of a qualifying chronic disability that manifested during active military, naval, or air service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 31, 2021. See 38 U.S.C. § 1154 (2012); 38 C.F.R. § 3.317(a)(1) (2018). For the purposes of presumptive service connection based upon the Persian Gulf War, Southwest Asia refers to Iraq, Kuwait, Saudi Arabia, the neutral zone between Iraq and Saudi Arabia, Bahrain, Qatar, the United Arab Emirates, Oman, the Gulf of Aden, the Gulf of Oman, the Persian Gulf, the Arabian Sea, the Red Sea, and the airspace above these locations. 38 U.S.C. §§ 1117, 1118 (2012); 38 C.F.R. § 3.317(e) (2018). Although the Veteran is a Gulf War Era Veteran, neither hearing loss nor traumatic brain injury are neither undiagnosed illnesses nor medically unexplained chronic multisymptom illnesses. Id. As such, this presumption is not afforded to the Veteran for the purposes of this claim and will not be further addressed.
With all claims for service connection, in the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).
The Board must assess the credibility and weight of all of the evidence, including the medical evidence, to determine its probative value, accounting for evidence that it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; not every item of evidence has the same probative value. 
Lay evidence, if competent and credible, may serve to establish a nexus in certain circumstances. See Davidson v. Shinseki, 581 F.3d 1313 (2009) (noting that lay evidence is not incompetent merely for lack of contemporaneous medical evidence). When considering whether lay evidence may be competent, the Board must determine, on a case by case basis, whether the Veteran’s particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that “[w]hether lay evidence is competent and sufficient in a particular case is a factual issue.”).
In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107 (2012); Gilbert, 1 Vet. App. at 49. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of the matter, the benefit of the doubt will be given to the Veteran. 38 U.S.C. § 5107(b) (2012); 38 C.F.R. § 3.102 (2018). 
The Board notes that it has thoroughly reviewed the record in conjunction with this case. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence submitted by the Veteran or on his behalf. See Gonzalez v. West, 218 F.3d 1378, 1380-81 (Fed. Cir 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). Rather, the Board’s analysis below will focus specifically on what the evidence shows, or fails to show, on the claim. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) (noting that the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant).
2. Entitlement to service connection, for treatment purposes only under 38 U.S.C., Chapter 17, for bilateral hearing loss
The Board next turns its attention to the Veteran’s claim for entitlement to service connection for hearing loss, for treatment purposes pursuant to 38 U.S.C., Chapter 17.
For VA purposes, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies of 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels (dB) or greater. 38 C.F.R. § 3.385 (2018). Impaired hearing will also be considered to be a disability when the auditory thresholds for at least three of the aforementioned frequencies are 26 dB or greater. Id. In the alternative, impaired hearing will be considered a disability when the speech recognition scores using the Maryland CNC Test are less than 94 percent. Id.
The Veteran’s service treatment records did not contain his entrance examination. Efforts to obtain his entrance examination were exhausted and it was unavailable. See Service Treatment Records, Dated January 2012. The Board notes that the Veteran’s service treatment records are silent for mention or diagnosis of a hearing loss.
Notably, the Veteran received an audiogram, while in service, in June 2006. The results of the audiological examination, revealed in pure tone thresholds, were as follows:
 HERTZ 
 500 1000 2000 3000 4000
LEFT 10 5 5 0 10
RIGHT 15 0 0 5 5
In December 2009, while in service, the Veteran received an additional audiogram. The results of the audiological examination, revealed in pure tone thresholds, were as follows:
 HERTZ 
 500 1000 2000 3000 4000
LEFT 0 5 5 0 0
RIGHT 15 0 0 10 5
The Veteran received a VA examination for traumatic brain injury and a general medical VA examination in February 2012. The traumatic brain injury specific VA examination reported no evidence of hearing problems, but the general medicine VA examination noted a history of hearing loss and tinnitus.
In March 2012, the Veteran received a VA examination to determine the presence and etiology of bilateral hearing loss. The Veteran reported that he had worked as a member of the military police for seven years. The results of the audiological examination, revealed in pure tone thresholds, were as follows:

 HERTZ 
 500 1000 2000 3000 4000
LEFT 10 5 5 10 10
RIGHT 15 10 10 15 20
Speech recognition, via testing of Maryland CNC, was 94 percent bilaterally, clearly demonstrating that the Veteran was not suffering from a hearing loss disability for VA purposes at this time.
As outlined above, a preponderance of the evidence is against the Veteran’s claim for service connection for bilateral hearing loss.
The Veteran does not currently, nor has he had at any time evidenced in the record, suffered from hearing loss pursuant to 38 C.F.R. § 3.385. 38 C.F.R. § 3.385 (2018). As such the Board finds that a preponderance of the evidence is against finding that the Veteran has current hearing loss, the first required Holton element. 
Notably, the Veteran’s received a VA examination in March 2012. None of the threshold measures were in excess of 26, and the Veteran’s speech recognition was not below 94, in either ear. The examiner is a licensed professional, competent to assess and render an opinion as to the presence or absence of hearing loss, and there is no evidence that she is not credible. The examiner assessed the Veteran in person, and was able to assess not only objective measures but subjective reports in rendering her decision. Moreover, this assessment is consistent with the evidence of record, which is silent for demonstrative hearing loss, pursuant to 38 C.F.R. § 3.385. Id.
The Board has considered the Veteran’s subjective complaints concerning a decrease in hearing, bilaterally, made to the March 2012 VA examiner. While the Veteran is competent to report symptomatology, and his perception of changes of his senses, VA determines hearing loss by threshold measures and speech recognition scores, based upon numerical results of testing. Id. The Veteran has not demonstrated the requisite medical expertise to perform diagnostic testing and assessment required for the diagnosis of hearing loss. As such, the Board affords the Veteran’s statements limited probative weight. See Jandreau, 492 F.3d at 1376-1377; see also See Barr v. Nicholson, 21 Vet. App. 303 (2008); Jones v. West, 12 Vet. App. 383, 385 (1999) (where the determinative issue is one of medical causation or diagnosis, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue).
There must be a current diagnosis of a disorder for service connection to be granted. Hickson v. West, 12 Vet. App. 247, 252 (1999). Without a medical diagnosis of hearing loss, for VA purposes, the Board must deny the Veteran’s claim. See Degmetich v. Brown, 104 F.3d 1328, 1333 (1997) (holding that the existence of a current disability is the cornerstone of a claim for VA disability compensation). 
Since the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C. § 5107(b) (2012); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert, 1 Vet. App. at 55-57; 38 C.F.R. § 3.102 (2018). For these reasons, the claim is denied.
3. Entitlement to service connection, for treatment purposes only under 38 U.S.C., Chapter 17, for service connection, for traumatic brain injury
The Board next turns its attention to the Veteran’s claim for entitlement to service connection for a traumatic brain injury, for treatment purposes pursuant to 38 U.S.C., Chapter 17.
The Veteran’s service treatment records did not contain his entrance examination. Efforts to obtain his entrance examination were exhausted and it was unavailable. See Service Treatment Records, Dated January 2012. The Board notes that the Veteran’s service treatment records are silent for mention or diagnosis of a traumatic brain injury.
The Veteran received a VA examination in February 2012 to determine the presence and etiology of any traumatic brain injury. The examiner noted, via history, that the Veteran was exposed to multiple blasts while he was deployed in Afghanistan. He was thrown down by several of the blasts. In addition, the Veteran was involved in a Humvee rollover, causing brief loss of consciousness. The Veteran admitted to having not been evaluated for a traumatic brain injury, but he stated that his memory is bad and that he has headaches. The Veteran stated that he firmly believed that his headaches are the result of a traumatic brain injury. Objectively, the Veteran presented with normal sensory testing and deep tendon reflexes. While the Veteran complained of mild memory loss, attention deficits, and concentration difficulty, there was no objective evidence of these complaints upon testing. The examiner found that the Veteran had normal judgment, appropriate social interaction, normal orientation, normal consciousness, and the ability to communicate both orally and in writing. The VA examiner diagnosed the Veteran with a remoted history of traumatic brain injury without residuals.
The remainder of the evidence of record is silent for a diagnosis of traumatic brain injury or treatment thereof.
The Veteran is seeking service connection for a traumatic brain injury. A preponderance of the evidence is against finding a current disability, the first Holton element. As previously noted, there must be a current diagnosis of a disorder for service connection to be granted. Hickson, 12 Vet. App. at 252. Without a medical diagnosis of TBI, the Board must deny the Veteran’s claim. See Degmetich, 104 F.3d at 1333 (holding that the existence of a current disability is the cornerstone of a claim for VA disability compensation). 

Notably, the February 2012 VA examiner diagnosed the Veteran with a remote traumatic brain injury without residuals. While the Veteran complained of symptomatology, the examiner found that there was no objective evidence of his reported symptoms. Thus, the examiner did not find a current diagnosis of traumatic brain injury, or any residuals thereof. The VA examiner is a licensed medical professional, competent to provide diagnostic testing and interpret them accordingly, and there is no evidence that the examiner is not credible. The VA examiner assessed the Veteran in-person, performing objective testing in addition to considering the Veteran’s subjective statements in symptomatology and history. Moreover, the examiner’s diagnostic opinion is consistent with the evidence of record, insomuch as the record is silent for a current diagnosis of traumatic brain injury. As such, the Board assigns the February 2012 VA examination great probative weight.
The Board has considered the Veteran’s statement made during the February 2012 VA examination that he was certain that his headaches and memory loss were due to a traumatic brain injury. While the Veteran is competent to attest as to his symptomatology, and there is no evidence that he is not credible in his assertions, he has not demonstrated the necessary medical expertise to diagnose any neurological disability, nor to attribute causation of any symptoms therein. As such, the Board assigns these statements limited probative weight. See Jandreau, 492 F.3d at 1376-1377; see also Barr, 21 Vet. App. at 303; Jones, 12 Vet. App. at 385) (where the determinative issue is one of medical causation or diagnosis, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue).
As noted above, service connection based on any theory of entitlement is not warranted without a current diagnosis. As with all claims for service connection, in the absence of proof of a present disability, there can be no valid claim. Brammer, 3 Vet. App. at 225 (1992).

Since the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C. § 5107(b) (2012); Ortiz, 274 F.3d at 1364; Gilbert, 1 Vet. App. at 55-57; 38 C.F.R. § 3.102 (2018). For these reasons, the claim is denied.
 
B. MULLINS
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD R. E. Trotter, Associate Counsel