﻿Citation Nr: 19159012
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 12-25 316
DATE: July 30, 2019

ORDER

The Appellant’s military service for the period April 19, 1984 through April 25, 1988 does not constitute honorable service for Department of Veterans Affairs (VA) purposes and is a bar to VA benefits for that period of service.

The Appellant’s May 8, 1976 motor vehicle accident (MVA) was due to willful misconduct and the injuries sustained therefrom are not subject to service connection for VA benefits.

New and material evidence has been received in order to reopen the claim of entitlement to service connection for fractured vertebra process at C6 or a cervical spine fracture is granted; the appeal is granted to this extent only.

New and material evidence has been received in order to reopen the claim of entitlement to service connection for a fractured left ankle is granted; the appeal is granted to this extent only.

New and material evidence has been received in order to reopen the claim of entitlement to service connection for a lumbar spine degenerative disc disease, with bilateral lower extremity radiculopathy and right leg shortening is granted; the appeal is granted to this extent only.

Entitlement to service connection for fractured vertebra process at C6 or a cervical spine fracture is denied.

Entitlement to service connection for a fractured left ankle is denied.

REMANDED

Entitlement to service connection for a lumbar spine degenerative disc disease, with bilateral lower extremity radiculopathy and right leg shortening is remanded.

FINDINGS OF FACT

1. The Appellant had three periods of active duty; from February 19, 1974 to February 28, 1978; from May 28, 1981 to April 18, 1984; and from April 19, 1984 to April 25, 1988. For the period of service from April 19, 1984 to April 25, 1988, he received a discharge under other than honorable conditions.

2. During the third period of service, the Appellant was charged with the wrongful use of controlled substance on two different occasions, and administratively discharged for drug use.

3. The Appellant was discharged “under conditions other than honorable” effective April 25, 1988; his DD214 indicates a narrative reason for discharge as “Misconduct-Drug Abuse,” with a separation code of HKK, which is an administrative separation code for drug use. 

4. The misconduct committed by the Appellant during the third period of service was willful and persistent and did not consist of minor offenses offset by otherwise honest, faithful and meritorious service.

5. There is no evidence the Appellant was insane at the time he committed the in-service misconduct.

6. A November 2004 VA administrative decision determined that the Appellant’s period of active service was dishonorable for VA purposes and a bar to VA benefits.

7. There were no compelling circumstances to justify the Appellant’s pattern of misconduct and the Appellant was not insane at the time of the offenses that led to his service discharge.

8. There has been no removal of any bar to VA benefits by any upgrade to the Appellant’s character of discharge.

9. The evidence indicates that the Appellant was drinking alcohol and riding a motorcycle at excessive speed prior to a May 1976 MVA which resulted in his injuries, and he was noted by treating medical personnel to have been intoxicated. 

10. The Appellant’s impaired driving ability (due to alcohol use) at excessive speed caused the MVA. 

11. The Appellant’s actions on the day of the accident, particularly the act of drinking to excess and then driving while intoxicated at an excessive speed, were willful misconduct.

12. Evidence added to the record since the final November 2004 and December 2009 rating decisions is not cumulative or redundant of the evidence of the record at the time of the prior decision and raises a reasonable possibility of substantiating the Appellant’s claims of entitlement to service connection for fractured vertebra process at C6 or a cervical spine fracture, and residuals of fractured left ankle, and lumbar spine degenerative disc disease, with bilateral lower extremity radiculopathy and right leg shortening.

13. The Appellant’s residuals of fractured left ankle as well as fractured vertebra process at C6 are due to his willful misconduct.

CONCLUSIONS OF LAW

1. The character of the Appellant’s discharge from service under honorable conditions for the period of April 19, 1984 to April 25, 1988 constitutes a bar to VA compensation benefits. 38 U.S.C. §§ 101, 5107, 5303; 38 C.F.R. § 3.1, 3.12, 3.13, 3.102, 3.354.

2. The Appellant’s MVA in May 1976 was due to willful misconduct and the criteria for service connection for resulting injuries are barred. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

3. New and material evidence has been received since the issuance of a final November 2004 decision; the criteria for reopening the claim for service connection for fractured vertebra process at C6 or a cervical spine fracture are met. 38 U.S.C. § 5108; 38 C.F.R. § 3.156.

4. New and material evidence has been received since the issuance of a final November 2004 decision; the criteria for reopening the claim for service connection for residuals of fractured left ankle are met. 38 U.S.C. § 5108; 38 C.F.R. § 3.156.

5. New and material evidence has been received since the issuance of a final December 2009 decision; the criteria for reopening the claim for service connection for lumbar spine degenerative disc disease, with bilateral lower extremity radiculopathy and right leg shortening are met. 38 U.S.C. § 5108; 38 C.F.R. § 3.156.

6. The criteria for service connection for fractured vertebra process at C6 or a cervical spine fracture are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

7. The criteria for service connection for residuals of fractured left ankle are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Appellant served on active duty from February 1974 to February 1978, and from May 1981 to April 1988. His service from April 19, 1984 to April 25, 1988 was under other than honorable conditions and is a bar to VA benefits.

This appeal comes before the Board of Veterans’ Appeals (Board) from a November 2004 administrative decision, and November 2004 and December 2009 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO), in St. Petersburg, Florida. 

In January 2013, the Appellant testified at a hearing before a Veterans Law Judge (VLJ) at the RO. A transcript of the hearing is of record. However, the VLJ who held that hearing is no longer employed by the Board. In a June 2019 correspondence, the Board notified the Appellant of that fact and offered another opportunity for a hearing before a VLJ who would decide his claim. In a June 2019 response, the Appellant indicated that he did not want another Board hearing and requested that his claim be considered on the evidence of record.

1. Whether claimant’s military service for the period April 19, 1984 through April 25, 1988 constitutes honorable service for VA purposes.

The Appellant contends that he should be entitled to Veteran status for VA purposes for the period of service from April 19, 1984 to April 25, 1988.

Service-connected compensation benefits may be established for a veteran who has a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. 1110. The term “veteran” means a person who served in the active military, naval, or air service, and who was discharged or released under conditions other than dishonorable. 

Accordingly, a discharge or release from active service under conditions other than dishonorable is generally a prerequisite to entitlement to VA pension or compensation benefits. 38 U.S.C. 101(18); 38 C.F.R. 3.12(a). 

There are two types of character of discharge bars to establishing entitlement for VA benefits: (1) statutory bars found in 38 U.S.C. 5303(a) and 38 C.F.R. 3.12(c); and (2) regulatory bars listed in 38 C.F.R. 3.12(d). 

Under the regulatory bars, which are at issue in this appeal, a discharge or release because of one of the following offenses is considered to have been issued under dishonorable conditions: (1) acceptance of an undesirable discharge to escape trial by general court-martial; (2) mutiny or spying; (3) an offense involving moral turpitude, to include conviction of a felony; (4) willful and persistent misconduct, to include a discharge under other than honorable conditions, if it is determined that it was issued because of willful and persistent misconduct. A discharge because of a minor offense will not, however, be considered willful and persistent misconduct if service was otherwise honest, faithful and meritorious; (5) homosexual acts involving aggravating circumstances or other factors affecting the performance of duty, e.g. homosexual acts involving aggravating circumstances or other factors affecting the performance of duty include child molestation, homosexual prostitution, homosexual acts or conduct accompanied by assault or coercion, and homosexual acts or conduct taking place between service members of disparate rank, grade, or status when a service member has taken advantage of his or her superior rank, grade, or status. 38 C.F.R. 3.12(d). 

An act is willful misconduct where it involves deliberate or intentional wrongdoing with knowledge or wanton and reckless disregard of its probable consequences. Mere technical violation of police regulations or ordinances will not per se constitute willful misconduct. 38 C.F.R. 3.1(n). An absence without leave, precluding the performance of military duties, cannot constitute a minor offense for purposes of willful and persistent misconduct. Stringham v. Brown, 8 Vet. App. 445 (1995). 

A discharge or release from service under one of the above conditions is a regulatory bar to the payment of benefits, unless it is found that the person was insane at the time of committing the offense causing such discharge or release or unless otherwise specifically provided. 38 U.S.C. 5303(b); 38 C.F.R. 3.12(b). Insanity is a defense to all statutory and regulatory bars, while compelling circumstances is only a defense to the statutory bar involving an AWOL period of at least 180 days. 

VA regulations provide that an insane person is one (1) who, while not mentally defective or constitutionally psychopathic, except when a psychosis has been engrafted upon such basic condition, exhibits, due to disease, a more or less prolonged deviation from his normal method of behavior; or (2) who interferes with the peace of society; or (3) who has so departed from the accepted standards of the community to which by birth and education he belongs as to lack the adaptability to make further adjustment to the social customs of the community in which he resides. 38 C.F.R. 3.354(a). In the process of consulting several well-accepted legal authorities, VA General Counsel has noted that the term insanity was synonymous with psychosis. VAOPGCPREC 20-97 (May 22, 1997). The burden is on the Appellant to submit competent medical evidence that he was insane at the time of his offenses. Stringham v. Brown, 8 Vet. App. 445 (1995).

The designation of the discharge as honorable by the service department is binding on VA as to character of discharge. 38 C.F.R. § 3.12(a). When a serviceman is given an other than honorable discharge by the service department, VA decides whether the character of such discharge is dishonorable for VA purposes. 

Service department findings are binding and conclusive upon VA for purposes of establishing an individual’s service and character of discharge. VA does not have the authority to alter the findings of the service department; the claimant’s recourse is with the service department. 38 C.F.R. § 3.203(a); Spencer v. West, 13 Vet. App. 376, 380 (2000); Duro v. Derwinski, 2 Vet. App. 530, 532 (1992); Harvey v. Brown, 6 Vet. App. 416, 424 (1994).

The benefit of the doubt standard applies to the question of veteran status. Donnellan v. Shinseki, 24 Vet. App. 167, 175 (2010).

A review of the Veteran’s service records demonstrates that he received a non-judicial punishment as detailed below:

In May 1975, the Appellant received a non-judicial punishment for violation of Article 86 of the UCMJ for unauthorized absence. He was sentenced to forfeit $60.00 per month for one month.

In May 1975, the Appellant received a non-judicial punishment for violation of Article 86 of the UCMJ for two periods of unauthorized absence. He was sentenced to fifteen days of restriction, a reduction in rank, which was suspended for six months, and to forfeit $120.00 per month for two months.

In June 1975, the Appellant received a non-judicial punishment for violation of Article 86 of the UCMJ for a five-day unauthorized absence and violation of Article 90 for failing to obey a lawful order by violating the terms of his restriction. He was reduced in rank and 5 days restriction.

In June 1975, the Appellant received a non-judicial punishment for violation of Article 90 of the UCMJ for violating a lawful regulation, violation of Article 86 for an unauthorized absence, and violation of Article 91 for leaving his appointed place of duty without proper authorization. He was sentenced to restriction and extra duty for 20 days and to forfeit $150 per month for two months.

Regarding the period of service from April 19, 1984 through April 25, 1988, the Appellant received non-judicial punishment as detailed below:

In January 1986, the Appellant received a non-judicial punishment for violation of Article 112 of the UCMJ for wrongful use of controlled substances. He was sentenced to be reduced in rank to forfeit $636 per month for two months.

In December 1987, the Appellant received a non-judicial punishment for two violations of Article 112 of the UCMJ for wrongful use of controlled substances. He was sentenced to be extra duty and restriction for 45 days, to be reduced in rank and to forfeit $508 per month for two months.

The record also shows that the Appellant was subject to an administrative separation board and subsequently discharged “under conditions other than honorable,” effective April 25, 1988. 

The Appellant’s DD214 indicates a narrative reason for discharge as “Misconduct-Drug Abuse,” with a separation code of HKK, which is an administrative separation code for drug use.

After considering the record in its entirety, the Board finds that the Appellant’s actions leading to his discharge constituted willful and persistent misconduct within the meaning of 38 C.F.R. § 3.12(d)(4). In this regard, the Appellant engaged in intentional wrongdoing with knowledge of its probable consequences when he committed several violations of the UCMJ during this period of military service. Specifically, the evidence shows that the Appellant committed serious offenses including the wrongful use of marijuana, a controlled substance. Given these facts, the Board finds that the incidents leading up to the Appellant’s discharge were sufficiently numerous in nature as to reflect an ongoing pattern of misconduct. The frequency of his misconduct shows a persistent pattern of behavior that may be characterized as willful, meaning intentional or deliberate, in that, there is no evidence of coercion or mental incapacity to suggest that it was otherwise. Furthermore, the fact that the Appellant has been subject to numerous non-judicial punishment sentences throughout his career and continued to engage in misconduct after being disciplined shows that he was aware that his actions were wrong and was unconcerned with the consequences. In summary, the Board finds that the Appellant’s actions in service reflected an ongoing pattern of misconduct.

In addition, the offenses involved restrictions and reductions in rank which interfered with his ability, and those who had to supervise the Appellant, to perform his duties. As such, the Board concludes that the Appellant’s offenses interfered with his military duties and, therefore, are not minor in nature. See Stringham, 8 Vet. App. at 448. 

The Board observes that the Appellant appears to argue that his misconduct discharge was due to a single episode of drug usage. In particular, he has argued:

I had exemplary service records and ratings, certificates and evaluations through out the period of service that you question. Then I did something foolish, I tried pot and got caught in a urine test. I was never threatened with a court martial but was reduced in grade and I decided to get out when my time came up.

However, service records showed that the Appellant tested positive for marijuana in October 1985 and December 1987. A medical interview in March 1988 reflected the Appellant’s admission to daily marijuana use, that he had prior Level III treatment for alcoholism in 1974, had a diagnosis of polydrug dependent not amenable to treatment, and was recommended for administrative separation. Overall, the Appellant’s current recollection of excellent service with one episode of drug usage is not credible. The Board places greater probative weight to the Appellant’s own prior statements recorded in service, the lengthy record of UCM violations listed above, and the stated reason for separation by the military. 

In addition, the evidence does not show, nor has the Appellant ever contended that he was insane at the time of committing the offenses resulting in his discharge. See 38 C.F.R. § 3.12(b). He did not offer such a defense in service, and there is no indication in the service medical records or otherwise of the existence of any insanity at the time of the commission of the offenses leading to his discharge. Therefore, the insanity exception to the bar of benefits based on discharge under dishonorable conditions is not for application in this case.

The Board acknowledges the Appellant’s continuing disagreement with the character of his discharge; however, the ultimate determination by the service department was a discharge under other than honorable conditions. VA is bound by the service department’s determination for the reason of a service member’s separation from active service and is not at liberty to change that determination. Duro v. Derwinski, 2 Vet. App. 530 (1992). Any disagreement that an Appellant may have with his discharge classification must be raised with the Board for Correction of Military Records. Harvey v. Brown, 6 Vet. App. 416, 424 (1994).

In summary of the Board’s findings, the entire period of service was under conditions other than honorable; the discharge was not upgraded by a discharge review board established under 10 U.S.C. § 1553; the combination of offenses constitutes willful and persistent misconduct; and the Appellant was not insane at any time during his service. As such, the Appellant does not have status as a “veteran” for VA purposes for this period of service, and the appeal is denied. In reaching this conclusion, the Board has considered the applicability of the benefit of the doubt doctrine; however, as the preponderance of the evidence is against the Appellant’s claim, that doctrine is not applicable.

2. Whether the May 1976 MVA constitutes as being in the line of duty.

The Appellant contends that his May 1976 MVA, during a period of honorable service, should be considered to be in the line of duty for VA purposes. The Appellant admitted drinking alcohol hours before the accident but denied that he was intoxicated. Rather, he asserts that he swerved his motorcycle to avoid an animal in the roadway, which caused his accident and subsequent injuries.

In his November 2018 Appeal, the Appellant states

There were no sobriety tests or blood alcohol level tests done by law enforcement or medical staff. All assessments and assumptions were made the following day or later…my records are clear of any LOD misconduct due to this accident although it was requested. I was cleared of it or it would be in my records.

No compensation shall be paid if the disability is a result of a veteran’s own willful misconduct or abuse of alcohol or drugs. 38 U.S.C. § 1110. 

The phrase “willful misconduct,” in its ordinary meaning, entails three requirements for the Board to find the phrase applicable. The Board must (1) identify conduct; (2) the identified conduct must be misconduct; and (3) the identified misconduct must be willful. Martin v. McDonald, 761 F.3d 1366, 1369 (Fed. Cir. 2014). Willful misconduct means an act involving conscious wrongdoing or known prohibited action and involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences. Id. at 1369-70. 

Willful misconduct refers to an act of conscious wrongdoing, involving elements of intent and voluntariness. Id. at 1370. Mere technical violation of police regulations or ordinances will not per se constitute willful misconduct. Willful misconduct will not be determinative unless it is the proximate cause of injury, disease or death. 38 C.F.R. § 3.1(n). 

An injury or disease incurred during active military, naval, or air service shall not be deemed to have been incurred in line of duty if such injury or disease was a result of the abuse of alcohol or drugs by the person on whose service benefits are claimed. The simple drinking of alcoholic beverage is not of itself willful misconduct. If, in the drinking of a beverage to enjoy its intoxicating effects, intoxication results proximately and immediately in disability or death, the disability or death will be considered the result of the person’s willful misconduct. 38 C.F.R. § 3.301(c)(2). Alcohol abuse means the use of alcoholic beverages over time, or such excessive use at any one time, sufficient to cause disability to or death of the user. 38 C.F.R. § 3.301(d).

VA must establish by a preponderance of the evidence that the injury was proximately caused by an act of willful misconduct by the veteran. See Thomas v. Nicholson, 423 F.3d 1279, 1285 (Fed. Cir. 2005); Myore v. Brown, 9 Vet. App. 498, 503 (1996). 

The determination as to whether the requirements for service connection are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. 38 U.S.C. § 7104(a); Baldwin v. West, 13 Vet. App. 1 (1999); see 38 C.F.R. § 3.303(a). 

In this case, there is no dispute that the Appellant has current disabilities of a cervical spine disorder as well as a thoracolumbar spine condition and left ankle condition. However, the AOJ determined that any disability resulting from the May 1976 MVA could not be service-connected because the MVA was caused by the Appellant’s willful misconduct. Namely, the Appellant’s intoxication at the time of the accident, which proximately caused the accident.

As an initial matter, the Board finds that the Appellant’s driving was impaired on the night of the MVA due to his alcohol use. 

The Appellant’s service treatment records revealed that he was admitted to the Naval Hospital Whidbey Island, Washington on May 8, 1978 by ambulance as a result of a motorcycle accident. Hospital admission records show that the Veteran was admitted on May 8, 1976 following a motorcycle accident after becoming intoxicated and slid down the highway for a variable distance. The records show that he was hospitalized there for five days and then transferred to the Naval Hospital in Bremerton, Washington. Admission records for this hospital stated that “this 19-year-old AN USN with two years of active duty was riding a motorcycle approximately 70 miles per hour and apparently lost control. He had apparently had been drinking at the time of the accident.” Records show that a line of duty was requested but none was incorporated into the service treatment records.

VA attempts to obtain a line of duty determination resulted in a negative response. The service department stated that a line of duty determination should have been placed into the service treatment records.

Review of service treatment records show that the Appellant had been treated for alcohol abuse on several occasions prior to the accident, including Level III treatment in 1974.

Next, the evidence makes it likely that his impaired driving ability (due to alcohol use) caused the MVA. Although there is no accident report of record, there is no dispute that the MVA was a single-vehicle accident in which the Appellant lost control and slid down the pavement for a variable distance. No other drivers were identified as being involved in the accident much less being at fault. 

Based on the foregoing, the Board finds that the Appellant’s actions on the evening of the MVA, were willful misconduct. 

Willful misconduct in cases involving alcohol consumption is the willingness to achieve a drunken state and, while in this condition, to undertake tasks for which the person is unqualified, physically and mentally, because of the resulting intoxication. 

The Appellant offered sworn testimony that on May 8, 1976, he consumed about one or two drinks early in the afternoon. Around 1200 hours, he went to the base club with a friend and shared one pitcher of beer. They ate a pizza and then departed and “went riding for a while, stopped and got gas, drank a soda. I smoked a couple cigarettes, went riding some more and I met this girl at the --at the club and decided we’re going to go stop at her house.” He reported that while on his way to the individual’s house, he swerved to avoid a large dog in the roadway, which caused him to lose control of his motorcycle and crash onto the roadway. He contended that during the time of the accident, he was not intoxicated or impeded in any way.

The Board does not find the Appellant’s testimony to be credible, as it conflicts with the documented evidence shortly after the May 1976 accident. The hospital records following the accident reflect that the Appellant was specifically noted by his treating physician after the accident to have been intoxicated. Specifically, treatment narrative notes by the treating physician states:

This 19-year-old white male was admitted on 8 MAY 76 following a motorcycle accident after becoming intoxicated and slid down the highway for a variable distance. He had multiple abrasions and contusions and complained of neck pain and left ankle pain on admission. He also had abdominal pain and was hospitalized for observation.

The Board also notes the Appellant’s statement that the “there were no sobriety tests or blood alcohol level tests done by law enforcement or medical staff. All assessments and assumptions were made the following day or later…my records are clear of any LOD misconduct due to this accident although it was requested. I was cleared of it or it would be in my records.” In any way stated, in a May 2014 statement, the Appellant stated:

Washington state Patrol was at the scene and no sobriety checks, breath or blood or DUI was given. So they were satisfied with my condition of not being intoxicated.

The Board does not find this allegation convincing. As discussed above, the Appellant’s current recollection downplaying the role marijuana usage played in his ultimate discharge is not accurate. In the May 2014 statement, the Appellant describes the accident as occurring on a 2 lane blacktop with no shoulder. At his hearing in October 2014, he described the accident as occurring off the highway on a S curved road. He hasn’t refuted the characterization of traveling approximately 70 miles per hour on such a dangerous road.

Despite the Appellant’s contentions regarding the absence of evidence such as blood alcohol tests reflecting that the Appellant was intoxicated at the time of his May 1976 MVA, the available records are sufficient evidence of intoxication leading to his accident. The relevant service records reflect that, following the Appellant’s one-car MVA in which he hit a tree at 6:00 PM, he was intoxicated enough to specifically have been noted to have been intoxicated by a treating physician. A medical professional is qualified to recognize intoxication without administering any blood tests, and the impression of this treating physician is given substantial probative weight. The Appellant argues that he could not have been intoxicated as Demerol was administered. However, this argument has no probative value as there is no competent evidence speaking to when or when not Demerol should be prescribed.

Given the Board’s determination that the Appellant’s statements regarding the circumstances of the May 1976 accident are not credible, as discussed above, the Board finds his statements regarding the absence of a line of duty finding to have “cleared” him to have minimal credibility or probative weight. See Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006); see also Pond v. West, 12 Vet. App. 341, 345 (1999); Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991).

The Board finds that although the Appellant may not have set out to drink to excess or to drink and drive when he initially went to the bar, he was willing to achieve a drunken state, and undertook a task (driving a motorcycle) for which he was unqualified due to intoxication. He drove his motorcycle at excessive speeds on an S curve road. Thus, he engaged in willful misconduct. 

The willful misconduct here is the Appellant’s choice to drink alcohol and operate a motor vehicle after he had consumed alcohol, and operate that vehicle in an unsafe manner. See Martin, 761 F.3d at 1369 (discussing the Board’s duty to identify the conduct that is misconduct). 

The preponderance of the evidence establishes that the Appellant’s actions were the proximate cause of the MVA and resulting disabilities. Proximate cause is “that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces injury, and without which the result would not have occurred.” Forshey v. West, 12 Vet. App. 71, 73-74 (1998) (quoting Black’s Law Dictionary 1225 (6th ed.1990)), aff'd sub nom. Forshey v. Principi, 284 F.3d 1335 (Fed. Cir. 2002); Thomas v. Nicholson, 21 Vet. App. 418 (2006) (discussing the Board's treatment of proximate causation), aff'd, 227 F. App. 895 (Fed. Cir. 2007). Here, the Appellant’s willingness to drink to excess and subsequent act of operating a motorcycle at excessive speed on an S-curved road was the cause that set the other causes into motion and but for that act, his resulting disabilities would not have likely occurred.

Based on the foregoing, the Board finds that the preponderance of the evidence establishes that the Appellant’s motor vehicle accident injuries were the result of willful misconduct. Accordingly, service connection for the disabilities cannot be granted, and the appeal is denied. As the preponderance of the evidence is against the claim, the benefit of the doubt rule does not apply. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

New and Material Evidence

Generally, a claim that has been denied in an unappealed Board or rating decision may not thereafter be reopened and allowed. 38 C.F.R. §§ 20.1100, 20.1103. The exception to this rule is 38 U.S.C. § 5108, which provides that if new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim. 

New evidence is defined as existing evidence not previously submitted to agency decisionmakers. Material evidence means evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence previously of record and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). 

For the purpose of establishing whether new and material evidence has been submitted, the credibility of the evidence, although not its weight, is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992). 

Regardless of the AOJ’s actions, given the previous unappealed denial of the claim on appeal, the Board has a legal duty under 38 U.S.C. §§ 5108, 7104 to address the question of whether new and material evidence has been received to reopen the claim for service connection. This matter goes to the Board’s jurisdiction to reach the underlying claims and adjudicate the claims on a de novo basis. See Barnett v. Brown, 83 F. 3d 1380, 1383 (Fed. Cir. 1996).

3. Whether new and material evidence has been received in order to reopen the claim of entitlement to service connection for fractured vertebra process at C6 or a cervical spine fracture.

4. Whether new and material evidence has been received in order to reopen the claim of entitlement to service connection for a fractured left ankle.

5. Whether new and material evidence has been received in order to reopen the claim of entitlement to service connection for a lumbar spine degenerative disc disease, with bilateral lower extremity radiculopathy and right leg shortening.

New and material evidence has been received in order to reopen the claim of entitlement to service connection for fractured vertebra process at C6 or a cervical spine fracture, and residuals of fractured left ankle, and lumbar spine degenerative disc disease, with bilateral lower extremity radiculopathy and right leg shortening.

November 2004 and December 2009 rating decisions denied the Appellant’s claims because the claimed conditions were not incurred in or was aggravated by military service, but rather were the result of the Appellant’s willful misconduct. The Appellant did not appeal, and new and material evidence was not received within the appellate period; thus, the November 2004 and December 2009 rating decisions are final. 38 C.F.R. §§ 20.200.

Since November 2004 and December 2009, new evidence has been added to the claims file. New evidence pertinent to this case is the Appellant’s November 2014 testimony before the Board. The Appellant testified that his motor vehicle accident was not due to drinking alcohol, but rather avoiding an animal in the roadway, and provided additional testimony about the response of local law enforcement.

As the nature of the MVA is material to the issue of service connection for the MVA-related injuries, this evidence is considered new and material. The Appellant’s statement is not redundant of past evidence and therefore new. The November 2014 testimony is material because it goes to the unestablished fact of whether the Appellant’s injuries were incurred in-service. Therefore, the Appellant’s November 2014 Board testimony is new and material evidence. 

In making the determination of materiality, the “credibility of the evidence is to be presumed.” Justus v. Principi, 3 Vet. App. 510, 513 (1992). Since the Appellant has provided new and material evidence, reopening this claim is in order. Shade v. Shinseki, 24 Vet. App. 110, 117 (2010).

Service Connection

Under applicable VA law, service connection may be established for disability resulting from personal injury suffered or disease contracted in line of duty in the active military, naval, or air service. 38 U.S.C. §§ 1110, 1131. Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).

In order to establish service connection, the following must be shown: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff’d, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

6. Entitlement to service connection for residuals of cervical spine fracture.

7. Entitlement to service connection for residuals of fractured left ankle.

In his May 2003 Application for Compensation and November 2014 Board testimony, the Appellant asserted that the fractured vertebra process at C6 or a cervical spine fracture and residuals of fractured left ankle are due to his May 1976 motor vehicle accident. This is entirely consistent with the hospitalization records.

As any injuries from the May 1976 motor vehicle accident have been found to have not been in the line of duty and the result of the Appellant’s own willful misconduct, service connection will not be granted. The STRs clearly document these injuries occurred as a result of the MVA. The Appellant has argued that an August 1975 injury, wherein he suffered a fall which temporarily resulted in numbness near his left ear which continued through his back to his right hip, may be responsible for his neck disability. However, the Appellant is not competent to associate any current aspect of neck disability to the August 1975 event, and there is no competent evidence suggesting such an association. Therefore, these claims are denied because of the absence of legal merit or the lack of entitlement under the law and medical opinion or examination is not warranted. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

REASONS FOR REMAND

1. Entitlement to service connection for lumbar spine degenerative disc disease, with bilateral lower extremity radiculopathy and right leg shortening is remanded.

The Appellant has asserted that his low back condition are the result of either his MVA or due to a falling injury in August 1975.

STRs indicate that, in August 1975, the Appellant suffered a fall which resulted in numbness near his left ear which continued through his back to his right hip.

STRs also indicate that the Appellant suffered lumbar spine injury as the result of his May 1976 MVA.

In an October 1983 service treatment note evaluating low back disability, the treating physician noted degenerative changes of the spine. The physician noted:

It is my impression that he is showing degenerative changes in his spine. These are very minor at the present time. They may have well been related to his previous motor vehicle accident. However, must rule out other forms of arthritis…

Notably, the manifestation of arthritis in service provides a basis for service connection if not associated with the MVA. As this opinion does not rule in or out the MVA accident as the cause for the degenerative changes, the Board remands this case for additional opinion.

The matter is REMANDED for the following action:

1. Associate outstanding VA and private treatment records with the claims file.

2. Forward the claims folder to an appropriate clinician to determine the nature and etiology of lumbar spine degenerative disc disease, with bilateral lower extremity radiculopathy and right leg shortening. The examiner should review the October 1983 STR noting degenerative changes of the lumbar spine and provide opinion whether the extent of degenerative chances shown in 1983 is solely attributable to the MVA injury in May 1976. In so doing, the examiner should consider the history of a falling injury in August 1975.

 

T. MAINELLI

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Michael J. O'Connor

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.